| 76 | .575 |
| 78 | .482 |

| 76 | 575 |
| 84 | 363 |
| 84 | 364 |

## GIBBS *v.* ADAMS.

### Opinion delivered October 21, 1906.

1. HOMESTEAD—BURDEN OF PROOF.—The burden is on one who claims a homestead to prove that he is entitled to the exemption. (Page 577.)

2. SAME—SEPARATION OF LAND FROM DWELLING HOUSE.—The mere fact that land is separated from the dwelling house by a street is not conclusive against the right to claim it as a part of a homestead exemption, though that fact may be considered in connection with other evidence. (Page 577.)

3. SAME—OCCUPANCY—INTENTION.—When a debtor sells his home and absconds, and his wife moves a few household goods into a dilapidated cabin on land which creditors are about to seize, all the circumstances must be considered to determine whether the claim of a homestead is made by her in good faith and with present intent to occupy the land as a home, or whether it is only colorable and made to shield the land from creditors. (Page 577.)

Appeal from Hot Spring Chancery Court.

LELAND LEATHERMAN, Chancellor.

Affirmed.

*Mehaffy & Armistead* and *Duffie & Duffie,* for appellants.

A homestead may include land separated by an easement, and yet retain the exempt character. Waples, Homestead and Exemptions, p. 150; Thompson's Homestead and Exemptions, p. 136; *Ib.* p. 112. A garden separated by a street may be part of an exempt homestead. 49 S. W. Rep. 633. The phrase "one town or city lot" includes the ground on which the head of the family has a house, with the appurtenances used as a home. 25 Ark. 101; Waples, Homestead and Exemptions, 232; Thompson, Homestead and Exemptions, pp. 88, 89. Actual occupancy is

not necessary to impress the homestead character. 69 Ark. 596. The wife may claim the husband's exemptions, even though he be an absconding debtor or fugitive from justice. 59 Ark. 211. And, in case of abandonment by the husband, she becomes the head of the family. 46 Ark. 159; 48 Ark. 539; 12 Am. & Eng. Enc. Law (2 Ed.), p 94.

*E. H. Vance, Jr.,* for appellees.

Land separated by a street from the lot on which the dwelling house stands does not constitute a part of the homestead. Thompson on Homestead and Exemption, § 128; *Ib.* § 151, p. 152. Intention merely, not carried into effect, is not sufficient to impress the homestead character. 31 Ark. 466, and authorities there cited. Kerr on Realty, Vol. 2, secs. 1552, 1553, and cases cited; 57 Ark. 179. Occupation as a residence, subsequent to the levy of an attachment, will not enable defendant to hold the land as a homestead, exempt from sale under a judgment sustaining the attachment. 51 Ark. 84; 69 Ark. 109.

RIDDICK, J. This is a controversy between E. Adams and other creditors of W. T. Gibbs and his wife, Sidney Gibbs, over a piece of land which she claims as a homestead, and exempt from execution against her husband. The chancery court, to which the case was transferred, held that the evidence failed to show that the land was a homestead, and ordered the land sold to pay the debts. Mrs. Gibbs appealed.

Briefly stated, the evidence shows that W. T. Gibbs owned about two acres and a half of land in the town of Malvern, on which was his dwelling and homestead. A street of the town divided the land in two parts. On one side was the dwelling house and 1.40 acres of land; on the other about 1 acre of land, on which was a wagon yard and barn and a small one-room house, formerly used in connection with the wagon yard as a camp house. These last named buildings were in a bad state of repair. Sometime in March, 1902, Gibbs and his wife sold the 1.40 acres of land on which their dwelling was located. Gibbs also endeavored to sell the other acre. Shortly after this sale Gibbs abandoned his wife and family, and left for parts unknown, but sent a message to his wife, directing her to move into the small house across the road which had been used as a camp house. Mrs. Gibbs had

a small amount of furniture and household goods carried across the street and placed in the camp house. The witnesses say that this furniture and goods was of little value. Some of them say that all of it was not worth over five dollars. After the attachments were levied Mrs. Gibbs made no attempt to occupy the house, and neither she nor any member of her family has ever lived in it. In fact, the witnesses say that the roof of the cabin was so full of holes, and the structure so dilapidated that it was not suited for a human habitation.

Now, a homestead in an incorporated town is, by our Constitution, limited to one acre. Art. 9, § 5. The burden was on the homestead claimant to show, either that this land across the street from the dwelling, and which she now claims, was a part of the homestead upon which she lived, or that it had been impressed as a homestead after the sale of the other homestead. The mere fact that the land was separated from the dwelling house by a street is not conclusive of the question, but that fact may be considered in connection with other evidence. There was over an acre of land across the street where the dwelling was located; and when that fact is considered, the evidence as to the boundaries of this homestead is not clear and definite enough to show that the acre in controversy is a part of the old homestead.

Gibbs, of course, had the right to establish a new homestead after the sale of the old homestead. In his absence his wife was the head of the family, and we may concede that her acts done in his absence, but with his sanction, may be treated as his acts; but the evidence makes it very doubtful as to whether Mrs. Gibbs ever had any present intention of occupying this cabin on this lot as a home. She may have formed the intention of occupying it at some future time after it had been repaired and rendered fit for a habitation, but the intention to make it her home in the future did not protect it from the attachment lien. *Tillar v. Bass,* 57 Ark. 179.

It is true that the mere fact that the cabin was small and in a dilapidated condition does not show that it was not a homestead. A thatched-roofed cabin, however humble, even a canvass tent, may be a homestead, if the owner actually dwells in it, and has his home there. But when a debtor sells his home and

37

absconds, and his wife moves a few household goods into a dilapidated cabin on land which creditors are about to seize, the court must consider all the circumstances to determine whether the claim of a homestead is made in good faith, and with an intention to occupy it as a home, or whether it is only colorable and made to shield the land from creditors.

We have examined the evidence in this case, and, while there is room for a difference of opinion, we think that the evidence, taken as a whole, fails to show that the land claimed was a homestead.

Judgment affirmed.