HORNOR v. NEW SOUTH OIL MILL.

Opinion delivered October 22, 1917.

1. CORPORATIONS—DUTY OF DIRECTORS.—A corporation can only act by its agents, and its directors are the governing body of the corporation; they stand in a fidiciary relation to it and its stockholders; they owe the duty of the utmost good faith towards the corporation and stockholders.

2. CORPORATIONS—INSOLVENCY—PURCHASE OF CLAIMS BY DIRECTOR.— A director of an insolvent corporation can not purchase outstanding claims against it for his own benefit, and hold the same for their full value; such a purchase will be deemed to have been made for the benefit of the corporation.

3. FRAUD—PROOF.—Where fraud is alleged, it is the duty of the court to carefully look into every circumstance connected with the transaction.

Appeal from Jefferson Chancery Court; *John M. Elliott*, Chancellor; affirmed.

*Coleman & Gantt* and *Bevens & Mundt*, for appellants.

1.   The evidence shows that E. S. Ready was interested in the New South Oil Mill; that he was at the same time director and special committeeman for the stockholders of the Valley Oil Company, a trustee for the Valley Oil Company and its stockholders—and that as such trustee he is forbidden by law to speculate with the trust property in the name of a partnership in which he was interested, or in his own name.   83 S. W. 599; 14 Pac. 545; 40 N. E. 362; 84 N. Y. 190; 121 N. Y. 107; 24 N. E. 13; 42 Pac. 439; Cook on Stock & Corp. Law, § 660; 63 Pac. 1011; 77 *Id.* 613.

Directors are not only trustees in relation to the corporate entity and property but in many respects trustees of the corporate shareholders.   48 Kan.  672;  29  Pac. 1063; 42 N. J. Eq. 431; 7 Atl. 842; 69 Kan. 498; 105 Am. St. 178; 66 L. R. A. 261; 5 *Id.* 361; 145 Fed. 103; 118 Ga. 362; 21 Wall. (U. S.) 616; 2 Thomp. on Corp., § 1218; 2 Pom. Eq., § 1090; 109 Ark. 590; 2 Thomp. on Corp., § § 1216, 1221, 1238, 1244-6; 2 Grant's Cases, 125; 10 Cyc. 799, 791.

2.   Third persons dealing with trust property, with notice are bound by the rule.   39 Cyc. 548, 550-2; 30 Ark. 249; 91 *Id.* 147; 109 *Id.* 590; 107 *Id.* 424; 111 *Id.* 62; 35 *Id.* 314.

3.   The claims should have been allowed at their cost price only, and this court should so order.

*Bridges, Wooldridge & Wooldridge,* for appellee.

1.   Ready did not purchase for himself nor was he financially interested in the New South Oil Mill.   He only acted as the messenger for the latter, who were the real purchasers.

2.   He acted in good faith and violated no duty he owed the Valley Oil Company.   The authorities cited do not apply.   Ready did not benefit personally by the purchase.   Appellants have failed to show lack of good faith or fraud on the part of Ready or the New South Oil Company.   99 Ark. 45; 108 *Id.* 415.

3. The claims purchased were not "trust property." 59 Ark. 562; 107 *Id.* 118.

4. The findings of the chancellor should be sustained. 112 Ark. 607.

HART, J. On July 10, 1916, E. S. Ready instituted this action in the chancery court against the Valley Oil Company, alleging that it was an insolvent corporation and praying for its dissolution and the settlement of its affairs. A receiver was appointed and its property was sold for enough to pay its debts in full.

Among the claims presented to the court for allowance was a claim for $29,700 filed by the New South Oil Mill, a copartnership.

E. C. Hornor, S. S. Faulkner and T. H. Faulkner, stockholders in the Valley Oil Company, filed exceptions to the allowance of the claim, and for grounds stated that E. S. Ready was an officer and stockholder in the Valley Oil Company and that he had purchased the claims of four creditors aggregating $29,700, at thirty-three and one-third cents on the dollar and that they were transferred to the New South Oil Mill for himself. Their contention was that said claims should only be allowed for the price actually paid the creditors for them.

The chancery court allowed the claims in full with interest and Hornor and others have prosecuted this appeal from that decree.

The facts upon which the decree was based are as follows:

The Valley Oil Company was a domestic corporation doing business at Pine Bluff, Arkansas, with an authorized capital stock of $83,000, which was divided into 830 shares of the par value of $100 each. The stockholders and the amount of stock owned by them in the company are as follows:

| | |
|---|---|
| E. C. Hornor | $19,000 |
| Geo. W. Willey | 13,000 |
| A. H. D. Perkins | 10,000 |
| W. A. Short | 10,000 |

| | |
|---|---|
| T. H. Faulkner | $ 4,000 |
| S. S. Faulkner | 4,000 |
| Leon Berton | 3,000 |
| John Meyers | 1,000 |
| E. S. Ready | 19,000 |

Perkins, Ready, Hornor and S. S. Faulkner, were directors of the corporation. Perkins was president and manager and Ready was vice president of the corporation. In 1915 the corporation owed debts to the amount of between fifty-seven and fifty-eight thousand dollars. Of these debts twenty-nine thousand seven hundred dollars were owed to creditors who were not secured. Hornor, Perkins and Willey endorsed the notes of the corporation for the balance of its indebtedness. In 1915 all these endorsers were insolvent except Ready. The officers and stockholders of the corporation regarded it as being in an insolvent condition, and in the fall of 1915, held a meeting at which the creditors of the corporation were present. An effort was made to get the unsecured creditors to take hold of the oil mill and run it until they had made sufficient profit to pay themselves. The creditors declined to do this. An offer was then made to buy the claims of the unsecured creditors at a discount but the creditors refused to take less than seventy-five cents on the dollar. This offer was refused by the stockholders of the corporation. In 1916 a committee, of which Ready was a member, was appointed to formulate a letter and send to the unsecured creditors offering thirty-three and one-third cents on a dollar for their claims. The draft of this letter was prepared by Ready and submitted to Perkins, the president of the corporation. Perkins sent the letter to the creditors and they replied by refusing the offer. Perkins was asked to resign because the company was insolvent and unable to pay him any salary. Perkins sent in his resignation, which was accepted on July 6, 1916.

As above stated, the present suit was filed on July 10, 1916. About the middle of June, 1916, the New South Oil Mill, a partnership composed of R. T. Doughtie and

Mrs. Ready, the wife of E. S. Ready, began negotiations looking to the purchase of these unsecured claims. E. S. Ready acted as agent of the firm and secured the assignment of the claims of four creditors aggregating in amount twenty-nine thousand and seven hundred dollars to the New South Oil Mill. The creditors were paid by a check of the firm signed by R. T. Doughtie and countersigned by E. S. Ready. Ready met the creditors in the city of New York in June, 1916, and there made the contract for the purchase of the claims at thirty-three and one-third cents on the dollar, cash. When he returned home the checks were sent in to the creditors at once. The New South Oil Mill was the successor of the South Oil Mill Company, which was a corporation. It had a capital stock of $50,000, divided into two thousand shares of stock, of which Ready owned eleven hundred and sixty-four. In the fall of 1912, the corporation was dissolved and its assets turned over to the New South Oil Mill, a partnership composed of R. T. Doughtie and Mrs. E. S. Ready. Ready gave to his wife his interest in the corporation. He was solvent at the time and has continued solvent ever since. He was a director in a bank in the city of Helena at that time. The bank became insolvent in 1913, and Ready was appointed receiver and wound up its affairs.

It may here be stated that it is the contention of the stockholders of the Valley Oil Company that Ready purchased the claims in question for himself and that their transfer to the New South Oil Mill was colorable merely. On this point Doughtie, being called by the appellants, testified that he and Mrs. E. S. Ready composed the firm of the New South Oil Mill, which operated an oil mill at Helena, Arkansas; that E. S. Ready had no interest in said firm; that Ready was paid the sum of $300 per month by the firm to act in an advisory capacity merely, but that he, Doughtie, was the active manager of the firm; that all the checks of the firm were signed by himself and countersigned by E. S. Ready or by Mrs. E. S. Ready; that the Valley Oil Mill Company became indebted to his firm in

the sum of $10,000 and in this way he became interested in the affairs of that corporation; that the corporation began to be regarded as insolvent in the spring of 1915; that differences had arisen between its stockholders and that he had been called in to help adjust these differences and in this way became perfectly familiar with the affairs of this corporation; that he knew a committee had been appointed to buy in the claims of the unsecured creditors at a discount and that their negotiations had been unsuccessful; that about the middle of June, 1916, he first conceived the idea of buying these claims for his firm and in this way help to protect his firm in its own claim; that he mentioned the matter to Mr. Ready and got him to undertake the negotiations for his firm; that pursuant to his directions, Mr. Ready went to New York City and met the representatives of the four unsecured creditors whose claims aggregated the sum of $29,700; that after some discussion of the matter, they agreed to take thirty-three and one-third cents on the dollar for their claims if they should be paid at once in cash. Ready agreed to this offer for the New South Oil Mill, and as soon as he returned to Helena, checks were sent to . the various creditors signed by R. T. Doughtie for the New South Oil Mill and countersigned by E. S. Ready as had been the custom. Doughtie stated positively that he first formed the design of buying these claims at a discount for his firm and so stated to Ready. He stated in positive language that the money was paid by his firm and that Ready had no interest whatever in the transaction except to act as agent for the firm.

E. S. Ready was also called as a witness by the appellants and in every respect corroborated the testimony of R. T. Doughtie.

It was agreed that at the sale of the property of the Valley Oil Company there were three persons bidding— E. C. Hornor of Helena, Mr. R. T. Doughtie, representing the New South Oil Mill, and Mr. Leo M. Andrews of Pine Bluff. All three bidders engaged in bidding until the sum of $50,000 was bid, but Mr. E. C. Hornor there-

after dropped out and bidding was thereafter increased from time to time by the other two bidders until the New South Oil Mill bid $66,450. Thereupon Leo M. Andrews bid $66,500, which was the last and best bid, and the property was struck off and sold to him for that amount.

E. S. Hornor and T. H. Faulkner testified that they were on the committee to purchase the creditors' claims at a discount and stated that after the committee had quit acting as a committee that they were endeavoring to buy in the unsecured claims for forty cents on the dollar; that they intended to pay the money themselves and buy in the claims for the corporation.

As above stated, the court found the issues in favor of the New South Oil Mill. The issue was the fraudulent conduct of Ready in the purchase of the claims of the unsecured creditors.

(1)   A corporation can only act by agents and the directors are the governing body of the corporation. They stand in a fiduciary relation to the corporation and its stockholders. They owe the duty of the utmost good faith toward the corporation and toward the shareholders who elect them. *Nedry* v. *Vaile,* 109 Ark. 584.

(2)   Ready was a director of the Valley Oil Company, and when it was thought to be in an insolvent condition he was appointed on a committee to compromise its debts and buy in the claims against it at a discount if possible. Under these circumstances he owed to the corporation and to the shareholders the duty of acting in their interest and for their benefit. He could not buy up its outstanding debts for his own benefit, knowing the corporation to be insolvent, and hold the debts so purchased for their full amount.

In 10 Cyc. 798, it is said that beyond question a director of an insolvent corporation will not be allowed to buy up its debts at a discount, and prove them against the corporation as a creditor for their face value.

In Thompson on Corporations, Vol. 2 (2 ed.), par. 1238, the rule is stated as follows:

"It may be stated as a general rule that a director will not be permitted to purchase claims against the corporation, either when he owes to it the duty of acting in its interests and for its benefit, or when, knowing the corporation to be insolvent, he buys such claims for his own benefit, intending thereby to get an advantage over the other creditors and hold the claims thus purchased against the corporation for their full amount. In all such cases it may be said that the director will have no claim against the corporation beyond the amount actually expended by him. Thus a director acting as a special committee to settle certain claims against the corporation, can not claim for himself the benefit of reductions secured by him in the adjustment and compromise of claims, though purchased by him with his own funds."

So it may be said that if Ready purchased the claims of the creditors of the Valley Oil Company for himself, or if he was a member of the firm in whose name the claims were purchased, or if he was financially interested in such firm, under the principles of law above cited, neither he nor his firm could reap any profit from the transaction, but the purchase would be considered to be made for the benefit of the Valley Oil Company and its stockholders.

(3) In testing this issue of fraud, we should, of course, thoroughly sift the transaction and consider it in its true light. All the attending circumstances which in any wise tend to shed light upon the transaction should be closely scrutinized and the entire field explored to determine whether or not the purchase was fraudulent within the meaning of the rule just announced. At the outset it may be well to remember that both Doughtie and Ready were called as witnesses by the appellants. They detailed the whole transaction without any hesitancy whatever, and there was no material discrepancy in their testimony. Ready organized the New South Oil Mill Company and was its principal stockholder. Doughtie was also interested in that corporation. They both were men of considerable experience in the oil mill business.

In the fall of 1912, all the property of that corporation was turned over to the New South Oil Mill, a partnership formed for that purpose. Doughtie and Mrs. Ready were members of the firm. Mrs. Ready acquired her interest by gift from her husband. Mr. Ready was solvent at the time he gave the property to her and has been solvent ever since. There is a suggestion that he was director in a bank, in the city of Helena, which failed in 1913, and that he gave this property to his wife in order to escape liability as such director. Ready was appointed receiver of the bank when it failed and there is nothing whatever in the record to show that his conduct as director of that bank had been such as to cause him to fear that he might become personally liable for the debts of the bank. So it may be said that he had a perfect right to give his wife an interest in the firm of the New South Oil Mill. It is true that he was afterwards paid a salary to act in an advisory capacity to the firm, but this the parties had a right to do. Doughtie was the active manager of the firm and checks given by the firm were signed by Doughtie and countersigned by Mr. Ready or his wife. In this way both members of the firm could keep a check on each other as to the firm's business.

Under these circumstances, we think the New South Oil Mill had a perfect right to purchase the claims of the creditors of the Valley Oil Company, and the fact that they employed Ready to conduct the transaction for them in no wise made the transaction fraudulent as far as the New South Oil Mill was concerned. We are not concerned in this opinion as to what the duty of Mr. Ready towards the shareholders in the Valley Oil Company should have been. If the New South Oil Mill had the legal right to purchase these claims, that right could not be defeated because the firm used for that purpose the services of a director of the Valley Oil Company corporation. This was not the case of a contract between corporations with interlocking directors or with a corporation where the director acted for it and also as agent for

the other contracting party. The creditors acted for themselves and Ready acted for the New South Oil Mill.

The question in the case which has given us the most concern is as to whether or not Ready in reality purchased the claims for himself in the name of the New South Oil Mill. If Ready was the real purchaser of the claims and the New South Oil Mill was merely used by him to conceal his interest in the transaction, such course was fraudulent within the rule above stated because of the confidential relation which existed by reason of Ready being director in the Valley Oil Company or which was created by him becoming a member of the committee appointed by the stockholders to purchase the claims of creditors for their benefit. Upon this issue we may consider any circumstances from which an inference of fraud was natural.

Counsel for appellant point to the fact that the Valley Oil Company was thought to be in an insolvent condition and Ready was one of its directors and actively participated in the management of its affairs; that he had been appointed on a committee for the purpose of compromising the debts of the corporation or buying in the claims of creditors at a discount; that he without notice to the other creditors or to any of the shareholders of the company went to the city of New York for the purpose of buying in these claims at a heavy discount ostensibly for a firm in which his wife owned a one-half interest. These were all cogent circumstances tending to show the want of good faith in Ready towards his fellow-shareholders, but the legal inferences of fraud which might be drawn therefrom were overcome by the positive testimony of Doughtie and Ready.

Doughtie testified that his firm was a creditor of the Valley Oil Company; that differences had arisen between the shareholders of that company and that he had been called in to adjust these differences; that in this way he became perfectly familiar with the affairs of the company; that he was the active manager of his firm and first formed the design of buying in these claims for his firm.

He stated positively that he asked Mr. Ready to act for his firm in the transaction; that Ready did act for the firm, that the amount paid, viz., thirty-three and one-third cents on the dollar, was actually paid by his firm. He further stated that Ready had no financial interest whatever in the transaction.

Ready was also called to the stand by appellants, and in every respect corroborated the testimony of Doughtie. They both had been men of recognized good standing in the business world, and there is nothing to impeach their testimony except the circumstances under which the purchase in question was made. The record shows that Doughtie was an active bidder when the assets of the corporation were sold and that his activity in that regard was the cause of the assets being sold for an amount sufficient to pay all the claims against the corporation.

The issue of fraud thus raised by the conflicting evidence was determined by the chancellor in favor of the New South Oil Mill, and after a careful consideration of the whole record, we are of the opinion that his finding is not against the preponderance of the evidence. Therefore, under the settled rules of this court, the decree will be affirmed.