## LILLY *v.* VERSER.

### Opinion delivered April 8, 1918.

1. JUDGMENTS—MAY BE SET ASIDE BY AGREEMENT.—Where the attorneys agree that a judgment may be set aside, the necessity of filing a verified complaint is waived, setting up statutory grounds for setting the judgment aside.

2. JUDGMENTS—RIGHTS OF PURCHASER.—A judgment is not a negotiable instrument and there can not be an innocent purchaser thereof. The purchaser of a judgment takes it subject to cancellation at the instance of any one entitled to have it canceled. The purchaser has no higher rights than the judgment creditor.

3. ACCORD AND SATISFACTION—PROPERTY GIVEN.—Property given and accepted in payment of a debt constitutes an accord and satisfaction thereof, and this rule applies where the debt is represented by a note and mortgage, and when the debt is adjusted the note and mortgage were not returned nor canceled.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; affirmed.

*Geo. M. Chapline* and *W. A. Leach,* for appellant.

1. The judgment was final and conclusive, the term had lapsed, there was no appeal and it was error to set it aside at a subsequent term. 113 Ark. 237; 98 *Id.* 234; 89 *Id.* 160; 52 *Id.* 316; 6 *Id.* 92; Kirby's Digest, §§ 4451, 4437.

2. Consent can not give jurisdiction. 90 Ark. 195; 33 *Id.* 106; 27 *Id.* 216; 14 *Id.* 203; 6 *Id.* 282; 5 *Id.* 23; 2 *Id.* 66.

3. There was no accord and satisfaction. 1 C. J. 523, 528. There was no consideration for one. See also 1 C. J. 580, § 143; 5 East 230, 539, § 40-41; 2 Ark. 209; 33 *Id.* 572; 55 *Id.* 369; 44 *Id.* 349; 75 *Id.* 354; 54 *Id.* 185; 88 *Id.* 473. The payment of a smaller sum in satisfaction of a larger is not binding unless there is a release for a good consideration, *supra.* The findings are clearly against the preponderance of the evidence. 122 Ark. 215; 178 U. S. 353, and others.

*Dwight Savage, Eugene Lankford, W. H. Gregory* and *J. F. Holtzendorff,* for appellees.

1. The judgment was properly set aside. The court had jurisdiction; the matter was fully heard and the findings are conclusive.

2. There was an accord and satisfaction. 71 Pac. 85; Words and Phrases; 1 C. J. 523. There was an unsettled account and a consideration therefor. 18 Wis. 166; 6 Cal. 402; 19 E. L. 392; 33 Ark. 572; 2 *Id.* 228; 17 L. R. A. (N. S.) 1197; 75 Ark. 359; 94 *Id.* 162; 98 *Id.* 269; 100 *Id.* 253; 122 *Id.* 212; 126 *Id.* 327; 112 *Id.* 503, etc. The court properly dismissed the complaint.

HUMPHREYS, J. On January 17, 1913, John Cox & Son, who were merchants, had a settlement with N. E. Verser, who was one of their customers. N. E. Verser owed Cox $2,214, for which he gave his note, and he, together with Josie Verser and E. E. Verser, executed two

mortgages to secure the indebtedness and future advances. One mortgage covered Verser's chattels and the other his equity in 200 acres of land. There was a prior mortgage for $3,500 on said lands. The land mortgage was executed to L. B. Berry, trustee for John Cox & Son. The business of John Cox & Son was managed by O. E. Griffin. In the fall of 1913, N. E. Verser owed Cox & Son $5,710.20, according to Cox's books. The 1913 rice crop brought $3,261.49 which was applied on the account, leaving a balance of $2,448.71, according to Cox's books. Verser kept no books. In March, 1914, Verser, by agreement with Griffin, sold all the personal property covered by chattel mortgage for $1,647, which amount was turned over to Griffin for John Cox & Son.

On the 21st day of February, 1916, this suit was instituted in the Lonoke chancery court by L. B. Berry, trustee, and John Cox against N. E. Verser, Josie Verser and E. E. Verser to foreclose the real estate mortgage for an alleged balance of $902 due on the account. John Cox died and the suit was revived in the name of E. O. Griffin, administrator. On or about the —— day of ——— Keller Lilly bought 120 acres of the rice land from N. E. Verser, and in consideration agreed to pay off the $3,500 mortgage on said lands. Keller Lilly went into possession of the lands and refused to pay the first mortgage because it was discovered by him that John Cox & Son held a second mortgage on same.

N. E. Verser and his wife Josie filed answer pleading accord and satisfaction and that John Cox & Son had agreed, after a refusal to satisfy and surrender the mortgage, to satisfy it if the Versers would give them a mortgage on the other eighty acre tract not purchased by Keller Lilly, but had also refused to carry out that agreement; and asked that Keller Lilly be made a party to the suit, that his deed be canceled and that he be required to surrender possession of said land.

E. E. Verser filed separate answer disclaiming any interest in the land and alleging that if he signed the mortgage it was through mistake.

The court heard the case upon the pleadings and evidence, and judgment was entered against N. E. Verser on the 6th day of October, 1916, for $932.80, which amount was declared a lien upon the real estate and said lien was foreclosed, including the equity of redemption of Keller Lilly, and a sale was ordered. It is in dispute as to whether the judgment was entered through mistake. On December 7th, Keller Lilly purchased the judgment and took an assignment thereof. At the following March term, the decree rendered on the 6th day of October, 1916, was set aside by the consent of the attorneys for L. B. Berry, trustee, and O. E. Griffin, administrator, and for appellees, with permission to take further proof in the case. Proof was taken and the cause was again heard and judgment rendered on May 21, 1917, dismissing the complaint of Berry, trustee, and Griffin, administrator, for the want of equity. On the 11th day of October, following, Keller Lilly filed a petition to vacate the order setting aside the decree of October 6, 1916, which he had purchased, and the decree dismissing the complaint of Berry, trustee, and Griffin, administrator. The court denied Lilly's petition. Berry, trustee, and Griffin, administrator, for Cox's estate, and Keller Lilly have lodged an appeal in this court.

(1) It is first insisted that the court erred in setting aside the decree of date October 6, 1916, at a subsequent term of court. Appellants contend that the decree became final upon adjournment of the October term and that the decree could not be set aside except on grounds and in manner provided by statute. It is recited in the order of March 27, 1917, vacating the decree of date October 6, 1916, that the attorneys were present and consented to the order. The parties took further evidence, briefed and submitted the case for trial on its merits on March 21, 1917. It must be presumed that the agreement of the

attorneys embodied one or more of the statutory grounds for setting aside or vacating decrees, else the court would not have assumed to set the decree aside. The attorneys, by consenting, waived the necessity of filing a verified complaint setting up the statutory grounds relied on for setting the judgment aside.

(2) But, it is insisted that Lilly purchased the judgment after the expiration of the term at which it was rendered and that he had a right to rely upon its validity. A judgment is not a negotiable instrument and there can be no innocent purchaser of it. The purchaser of a judgment takes it subject to cancellation at the instance of any one entitled to have it canceled. The purchaser succeeds to the rights of the judgment creditor by virtue of his purchase but gets no higher rights than the judgment creditor had.

It is insisted that the court erred in finding that there had been an accord and satisfaction of the indebtedness. This must depend upon the facts. N. E. Verser, who was a rice farmer being carried and furnished by John Cox & Son, failed to raise enough rice in 1913 to liquidate his indebtedness. He was very much involved. John Cox & Son did not want to extend further credit to him, so proposed through their manager, Griffin, to take $1,600 in full satisfaction of the balance due the firm from Verser. The note, which had been executed at the time the mortgages were given, had been entered and carried in the account. The parties did not settle and strike a balance but it was stated, when Griffin proposed to take $1,-600 in full settlement of the balance due, that Verser owed Cox about $2,400. Verser accepted the proposition and undertook to raise the money but failed.

Griffin testified, in substance, that when Verser reported he could not get the money, he regarded and treated the $1,600 cash proposition at an end and applied the cash and credit sales of the mortgaged property on the account, which left a balance due of $902.

N. E. Verser testified, in substance, that he told Griffin he was unable to borrow the money but he believed he could sell his horses, mules, cattle, etc., for as much as $1,600 and raise it in that way; that Griffin agreed that they together might do so, and helped him hunt up buyers for the property; that they fixed a day certain for the sale on the farm, which was attended by Griffin; that he and Griffin consulted and agreed on the sale price of everything that was sold; that Griffin did the collecting, and, so far as he knew, everything sold for cash; that he afterwards learned Griffin allowed some of their other customers to have a part of the property on credit and charged it to them; that Griffin took a part of the property to town and delivered it himself to the purchasers; that he requested both Griffin and Cox to return his note and mortgage, but they refused because all the property did not sell for cash; that some time after this transaction, he had an opportunity to sell 120 acres of his land for enough to liquidate the first mortgage of $3,500 and interest to Keller Lilly, and, in order to effect the sale, he proposed to Griffin to give Cox a new mortgage on the remaining 80 acre tract to secure the balance on account, if he would surrender and release the mortgage on the 120 acre tract he desired to sell to Lilly; that Griffin agreed to do so, but, afterwards, on the advice of an attorney, refused to carry out the agreement; that Keller Lilly held possession of the 120 acre tract and refused and failed to pay the first mortgage because the Cox mortgage was not satisfied of record.

Griffin stated that he had no recollection of Verser demanding the original mortgage; that he did request him to take a new mortgage on the 80 acres to secure the balance and release the original mortgage on the 200 acre tract which he agreed to do, but that Verser never returned with the mortgage on said 80 acre tract.

The testimony of E. O. Griffin was corroborated in part by that of R. A. Tippett, W. P. Fletcher and John C. Bradford. The testimony of N. E. Verser was corrobo-

rated in part by that of E. E. Verser, Gaston Verser, L. Berry and J. W. Nealeigh. J. W. Nealeigh was present at the sale of the stock and gave the following testimony: "I was present at the sale Well, Verser and Griffin were talking and Griffin said if the stock brought $1,600 he would cancel the debt. Mr. Verser said, 'That will give me my home farm. I will have my home farm left.' Mr. Griffin said if the stock brought $1,600 it would settle the mortgage."

The testimony upon the whole is somewhat conflicting, but, after a careful reading of it, we are convinced that Griffin, in effect, took over and sold the mortgaged property at private sale with the understanding that if it sold for $1,600 it would settle the mortgage.

(3) It is insisted that because the note and mortgage were not returned, or because no receipt or release was issued, there was no accord and satisfaction, for the reason that under the rule announced in *Dreyfus* v. *Roberts,* 75 Ark. 354, it was necessary to issue a written receipt or release in addition to paying a smaller amount in satisfaction of a larger in order to constitute an accord and satisfaction. In the instant case, the payment and acceptance constituted an accord and satisfaction irrespective of whether the note and mortgage were surrendered or whether a written receipt or release was issued, because under the common law and American authorities property given and accepted in payment of a debt constituted an accord and satisfaction thereof. *Pinnel's Case,* 3 Coke, Part V, p. 117a; Pollock's Principles of Contract (1st Am. from 2d. Eng. ed.) p. 165; 1 Am. & Eng. Enc. of Law (2nd ed.) pp. 414-419. Cox & Son, through their manager, took over the mortgaged property and sold it with the aid and consent of Verser upon understanding that if the property sold for $1,600 it would settle the debt. In other words, there was an appropriation of the mortgaged property in the value of $1,647 in full settlement of the debt. Cox & Son received the benefit of the services of N. E. Verser in hunting up buyers and assist-

ing in selling the property; and also profited by saving the expense of a foreclosure. This court said in the case of *Lamberton* v. *Harris,* 112 Ark. 503, that ''The delivery of property to the creditor and the performance of services by the debtor for the creditor which are received and accepted by the creditor in satisfaction of his debt, and which are of benefit to him, no matter how small the value may be, is a sufficient consideration to support an accord and satisfaction.''

No error appearing in the record, the decree is affirmed.