## TUCKER v. STELL.

### Opinion delivered June 15, 1925.

1. PARTNERSHIP—RIGHT TO CONTRIBUTION.—Where, after settlement of partnership accounts, a partner paid in full an outstanding note against the firm, he is entitled to recover from his co-partner one-half of the sum so paid with interest from date of payment.

2. FRAUDULENT CONVEYANCE—GIFT TO WIFE.—Where a husband sold land and deposited the proceeds to his wife's credit as a gift to her, it was proper to subject the deposit to the payment of his debts.

3. TRUSTS—INSUFFICIENCY OF EVIDENCE.—In a suit to hold the proceeds of land deposited in his wife's name subject to the husband's debts, where the deed from the wife's father to the husband expressed a consideration of $100, and this land was vacant and had to be improved before it had any usable value, and the husband made all improvements and, after holding it for 27 years, sold it for $3500, finding that the property was not subject to a trust in favor of the wife was justified, though she testified that her father intended a trust in her behalf.

4. HOMESTEAD—EXEMPTION OF PROCEEDS.—Although property was a homestead, and not subject to payment of the owner's debts, the proceeds of the sale thereof were not protected beyond exemption as to personal property.

5. PARTNERSHIP—CONTRIBUTION—INTEREST.—Where a partner paid the balance due on a partnership note bearing 10 per cent. interest, and took an assignment thereof, he is entitled to hold his co-partner liable for one-half of the amount so paid with 6 per cent. interest.

Appeal from Ashley Chancery Court; *E. G. Hammock*, Chancellor; modified.

*G. P. George* and *Frank Strangways*, for appellant.

*Compere & Compere*, for appellee.

McCULLOCH, C. J. Appellant, S. G. Tucker, and appellee, W. A. Stell, were copartners in the operation of

a farming business in Ashley County, Arkansas, during the years 1917, 1918, 1919 and 1920. They became indebted to the People's Bank of Portland, Arkansas, in a large sum of money, which was reduced to the sum of $1,712.24, and on March 3, 1921, they executed to the People's Bank their negotiable note for that amount, payable on November 15th thereafter, with interest from date at the rate of ten per cent. per annum. The note was signed by the copartnership and indorsed by the copartners individually. The note was paid down to $740.14 by the copartners, and in March, 1922, there was a final settlement between the parties of the partnership accounts, and thereafter Tucker failed to pay anything more on the debt and pleaded his inability to do so. On July 20, 1922, appellee paid to the bank the full amount of said balance due on the note, and one-half of this amount was credited on the note, leaving, according to the note itself, a balance of $370.07 apparently due and unpaid, and in this condition the note was transferred to appellee by the bank.

In the year 1895 Mr. Cammack, the father of S. G. Tucker's wife, conveyed to the latter a vacant lot in the town of Portland, the deed reciting a cash consideration in the sum of $100. Tucker subsequently added by purchase a small strip of ground to the acre conveyed to him as aforesaid, and there is a controversy as to the area of the strip thus added. This controversy, however, is unimportant in view of the conclusion we have reached in the case. Subsequently, Tucker built a home on the lot conveyed to him by Cammack, and the place was occupied by Tucker and his wife as a homestead. On March 7, 1923, S. G. Tucker sold and conveyed to one Trim the house and lot in question, including the strip of ground which he had added to the lot conveyed to him by Mr. Cammack. The consideration for this deed was the sum of $3,500, paid to S. G. Tucker by Trim. The payments were made by two checks, each for the sum of $1,750, payable to S. G. Tucker, and he deposited the same in the

Portland Bank at Portland, Arkansas, in the name of his wife, Mattie Tucker.  Tucker then removed to Texas, and, about the time he was moving, appellee instituted an action in the chancery court of Ashley County against S. G. Tucker and his wife, Mattie, and the Portland Bank, seeking to recover the amount which he claimed that Tucker owed him by way of contribution of the amount paid to the People's Bank, and to subject to the payment of this debt the money deposited in the Portland Bank to the credit of Mrs. Tucker. Appellee also instituted an action at law against the same parties and for the same purpose, but the action was transferred to the chancery court, and the two actions were consolidated and tried together.  The court, at the beginning of the action, issued an injunction restraining the Portland Bank from paying out the funds held to the credit of Mrs. Tucker to the extent of the sum of $800, which was sufficient to pay appellee's debt and interest.  Appellee claimed $370.07, half of the amount that he had paid to the People's Bank on the note, together with interest at ten per cent. per annum from the date of payment.  The court heard the case on testimony adduced orally and by an agreed statement of facts and rendered a decree in favor of appellee for the recovery of $370.07, with interest at ten per cent. from July 20, 1922, amounting in all to the sum of $445.23, and decreed that this sum be paid by the Portland Bank out of the funds held to the credit of Mrs. Tucker, and an appeal has been duly prosecuted to this court.

We are of the opinion that the testimony in the case fully sustains the finding of the chancellor, and that the law applicable to the facts of the case authorized the relief granted under the decree appealed from.

There was originally an issue in the case as to whether or not the partnership accounts were unsettled. In the pleadings, appellant S. G. Tucker alleged that the accounts were unsettled, and that on a final accounting between the parties appellee was indebted to him more

than the amount claimed by the latter on the note. The evidence is clear, however, that prior to the commencement of this action there was a complete settlement between the parties, and that there were no other outstanding accounts or equities to be adjusted between them. That feature of the defense has been abandoned, and it is now conceded that appellant S. G. Tucker is liable to appellee for one-half of the amount paid by appellee to the People's Bank in discharge of the copartnership indebtedness. It is insisted, however, that the decree subjecting the funds in the bank to the credit of Mrs. Tucker to the payment of this indebtedness is not correct. Her contention is that the lot in Portland was conveyed by her father to her husband in trust for her use and benefit, that the proceeds of the sale belong to her, and that they were not liable for her husband's debts. The proof abundantly warrants the conclusion that Tucker was insolvent at the time he paid the proceeds of the sale of his homestead to his wife. The consideration for the deed was actually paid to him by check, and he paid it over, to be deposited in the bank to the credit of his wife. This money should be subjected to the payment of the debts of S. G. Tucker, not for the reason that Mrs. Tucker was estopped to claim the property by having permitted her husband to use it as his own, but for the reason that the property never belonged to Mrs. Tucker at all and the money was placed to her credit as a voluntary gift to her. It is claimed on behalf of Mrs. Tucker that the conveyance by Cammack to S. G. Tucker was intended as the creation of a trust in favor of Mrs. Tucker, but the proof does not warrant a finding to that effect. It is true that Mrs. Tucker testified that such was her father's intention, but she states no agreement or fact upon which a conclusion could be based that there was in fact an intention to create a trust. On the contrary, her statement in this regard is borne down by other circumstances which contradict the theory that there was an intention to create a trust. In the first place, the deed

itself expressed a cash consideration of $100. The lot conveyed was vacant property and had to be improved before it had any usable value. All of the improvements on the place were made at the expense of S. G. Tucker himself, and he sold the property after holding it for twenty-seven years in his own name and received the sum of $3,500 therefor. It is therefore not a question of estoppel involved in the case, but a question whether or not Mrs. Tucker has proved that the property was conveyed to her husband in trust for her. The chancellor concluded that such was not the case, and we think his finding was justified by the proof of circumstances in the case. We must, therefore, treat the property as having been owned and improved and sold by S. G. Tucker. The property was a homestead and therefore not subject to the payment of his debts, but the proceeds of the sale, while being held as money, were not exempt except to the extent of exemptions allowed in personal property to a debtor. There has been no attempt to claim the money as exempt under the law. In fact, the amount of money held is far above the amount of the exemption, for, as before stated, he turned over to his wife the full purchase price of $3,500. He was insolvent at that time, and his creditors were entitled to have this money subjected to the payment of his debts. The fact that the proceeds of the money accrued from the sale of the homestead does not operate as any protection beyond that afforded by the exemption laws with reference to personal property.

Counsel for appellant rely mainly on the decision of this court in *Davis* v. *Yonge,* 74 Ark. 161, as supporting their contention that Mrs. Tucker was entitled to hold this fund. The facts of that case are entirely different from the facts proved in the present case. In that case the proof was that the homestead was sold for $5,000, and that the wife refused to sign the deed unless she was paid a consideration of $400 for doing so, and that there was an agreement carried out whereby she received that sum, which was invested in other lands sought by credit-

ors of the husband to be subjected to his indebtedness. In disposing of the case, Judge RIDDICK, speaking for the court, said: ''But the relinquishment of dower and homestead rights on the part of the wife upon a sale of the land by the husband is a sufficient consideration to support a reasonable settlement upon her out of the proceeds of the sale.* * *   Now, Davis sold his homestead for $5,000, and out of the proceeds, according to the testimony of himself and wife, he paid her $400, a sum that was not so out of proportion to the consideration as to indicate fraud.''   In the present case there is no proof at all that Mrs. Tucker was paid any sum of money in consideration of her signing the deed to the homestead, but, as a matter of fact, the whole—not merely a part— of the consideration was paid over to her by her husband. It is obvious therefore that the case cited has no application at all to the present one.

It is finally contended that the court erred in allowing appellee to recover interest at the rate of ten per cent. per annum.   We are of the opinion that this contention of counsel for appellant is sound.   The original note called for interest at the rate of ten per cent. per annum, and appellee paid the accumulated interest up to that date at the contractual rate.   Appellant Tucker became indebted to appellee, not by the obligation assumed in the note itself, but by reason of the legal obligation which arose from the payment by appellee of the amount which appellant Tucker should himself have paid.   The note itself was discharged by the payment, notwithstanding the formal transfer to appellee as one of the obligors. *Exchange National Bank* v. *Chapline,* 109 Ark. 242.   The rate of interest on the debt of Tucker to appellee was controlled, not by the original contract, but by the obligation which arose by operation of law, and the legal rate of interest is six per cent. per annum instead of ten.   The decree is modified so as to correspondingly reduce the amount of recovery, and, as so modified, the decree will be affirmed.