BANK OF QUITMAN *v.* MAHAR.

4-4648

Opinion delivered May 3, 1937.

*Clark & Clark,* for appellant.
*George F. Hartje,* for appellee.

McHANEY, J. In his lifetime, William McAnless owned two farms in Faulkner county, Arkansas. One was a 96-acre farm and the other a 34-acre farm, the latter being about a mile distant from the former. He lived on the 34-acre farm at the time of his death which occurred in 1923. He left surviving him his widow, his daughter, Gracie, who, some time later, married L. S. Mahar, as his only heir-at-law. The widow and daughter continued to live on the 34-acre tract. Some time prior to June 15, 1935, appellee, her husband and mother, executed their joint note to appellant for borrowed money and on July 15, 1935, appellant obtained a judgment in the Faulkner circuit court against all three in the sum of $442.25, with interest and costs. On August 20, 1936, appellant caused an execution to be issued on this judgment and the sheriff levied upon said 96 acres of land. On August 26, 1936, appellee filed a schedule of her property and claimed the 96-acre farm exempt as her homestead. Appellant filed a response and exceptions to her claim of exemptions, alleging that said lands were not her homestead and that she resided on other lands which she owned and had willfully withheld from her schedule. The clerk of the court sustained her claim of exemptions and issued a supersedeas. Appellant then filed in the circuit court a motion to quash the supersedeas on which a trial was had and the court, sitting as a jury, denied appellant's motion to quash and sustained the action of the clerk, from which is this appeal.

The question presented on this appeal is: Did appellee ever impress the 96-acre farm with the homestead character? At the outset it may be stated as well settled that mere intention to establish the homestead character to land without actual occupancy is not sufficient. Nor is mere occasional occupancy of it sufficient to impress it with the homestead character, if in fact his actual residence is elsewhere. One of our leading cases is *Tillar* v. *Bass*, 57 Ark. 179, 21 S. W. 34, where it was held, to quote a syllabus: "Neither the intention of the owner of land to occupy it as his homestead, nor his

occasional occupancy of it, as during harvest for the purpose of gathering his crops, will be sufficient to impress it with the character of a homestead if his actual home residence was elsewhere.'' In that case Tillar and Stanley recovered judgment against Bass and procured an execution to be levied upon certain land belonging to him which he claimed exempt as his homestead. The clerk sustained his schedule and issued a supersedeas staying the execution. The plaintiffs applied to the circuit court, which sustained the right of homestead. This court reversed the judgment. In the opinion in that case, Judge BATTLE used this language, referring to appellee Bass: ''He testified that his intention, during the entire time he owned it, was to make his land his home, and that he 'considered' it his home after he built the new house and moved his bed. But his occupancy before and after he built the new house, and until he moved his family, was of the same character, he working and sleeping there while cultivating and gathering crops. There was no evidence that he moved his household goods, domestic animals and other property, which usually attend the change from one to another home in the country. His family remained away. His stay was more like camping than a residence. It was not home-like. In short, there was no evidence to show that he actually and in good faith occupied his land as a residence before the levy of the execution. His intention to do so at a future time, and failure on account of his wife's condition, did not endow it with the character of a homestead. It was, nevertheless, subject to sale under execution at the time it was levied on.''

It will be seen, therefore, that one must actually and in good faith occupy land as a residence, before the levy of an execution, to impress it with the homestead character and to make it exempt from the levy of the execution.

In the case at bar, it is undisputed that just two days prior to the rendition of the judgment against appellee, her husband, and mother, she undertook to impress the 96-acre tract with the homestead character. On July

13, 1935, she says that she took her baby and went over to the 96-acre farm after supper on Saturday night and spent the night there, returning to her old home on the 34-acre farm before breakfast. The 96-acre tract was rented, but she claims she arranged with the tenant to occupy one room of the house. She did not have any personal property on this farm except that of her little girl who had a bedstead, some bedding, a table and perhaps a few cooking utensils, which her mother had given her little girl. She also claims that she and her mother had a verbal agreement by which her mother was to take the 34-acre farm and she was to take the 96-acre farm, but such agreement was not evidenced by any deeds or written contracts. The facts in this case are quite similar to those in *Tillar* v. *Bass, supra.* In the present case, appellee, as before stated, had a bed and a table, some cooking utensils and staple groceries in one room of a tenant house, most of which belonged to her daughter. She claims to have slept there only one night prior to the rendition of appellant's judgment. The execution was issued, as before stated, on August 20, 1936, and from July 13, 1935, to that time or to the time of filing her schedule, which was six days later, she does not claim to have spent over three or four nights in the home on the 96-acre farm and her days were spent with her mother, who is nearly blind and who has to be looked after by appellee. It does not appear that the whole family has ever occupied this house on the 96-acre farm or that they ever moved their personal belongings to such farm, including live stock, poultry, and whatnot.

In *Gibbs* v. *Adams,* 76 Ark. 575, 89 S. W. 1008, it was held that the burden is on the homestead claimant to prove that he is entitled to the exemption and it was there further held, to quote a syllabus: "When a debtor sells his home and absconds, and his wife moves a few household goods into a dilapidated cabin on land which creditors are about to seize, all the circumstances must be considered to determine whether the claim of a homestead is made by her in good faith and with present intention to occupy the land as a home, or whether it is

only colorable and made to shield the land from creditors." In that case, the homestead claim was denied. In *Chastain* v. *Ark. Bank & Trust Co.*, 157 Ark. 423, 249 S. W. 1, it was said: "There can be no such thing as a fraudulent acquisition of a homestead, for the law permits it regardless of the rights of creditors. *Ferguson* v. *Little Rock Trust Co.*, 99 Ark. 45, 137 S. W. 555, Ann. Cas. 1913A, 960. It is quite another thing, however, to say that a given tract or lot of real estate must be occupied in good faith as a home before it becomes impressed with the character of a homestead under the law. This court has steadily adhered to the rule that actual occupancy in good faith is essential to the impressment of the homestead character. A mere intention to occupy as a homestead in the future is not sufficient. (Citing cases.)

"The good faith of the occupancy may be inquired into for the purpose, not of determining whether the occupant is entitled to impress the property as a homestead, but of determining whether the occupancy was to actually establish a home. *Gibbs* v. *Adams, supra; Kulbeth* v. *Drew County Timber Co.*, 125 Ark. 291, 188 S. W. 810." See, also, *Freer* v. *Less,* 159 Ark. 509, 252 S. W. 354.

When we apply these principles to the facts in this case, it appears to us to be undoubted that appellee's occupancy of the 96-acre tract was feigned, and was not in good faith, but was only colorable in an effort to defeat her judgment creditors.

The judgment of the circuit court will, therefore, be reversed, and the cause remanded with directions to quash the supersedeas and permit the execution creditor to proceed to collect its judgment.