Hinton *v.* Willard.

4-8809, 4-8810, consolidated.                220 S. W. 2d 423

Opinion delivered May 2, 1949.

Rehearing denied June 6, 1949.

*Claude Williams* and *Vol T. Lindsey,* for appellant.

*Hill, Fitzhugh & Brizzolaro* and *J. Wesley Sampier,* for appellee.

ED. F. McFADDIN, Justice.   Appellants challenge a decree of the Benton Chancery Court, and also a decree of the Washington Chancery Court (both rendered on the same evidence), in each of which decrees the Courts set aside as fraudulent certain conveyances and transactions between the appellants (defendants), and subjected properties in Benton and Washington Counties to the lien of the judgment which the appellees * (plaintiffs) hold against appellant, W. L. Hinton.   The record presented is voluminous.   The two transcripts exceed 620 typewritten pages; and the abstracts and briefs exceed 450 printed pages.   For convenience, we will refer to the parties as they were styled in the lower courts; and will detail the facts and discuss the issues in the following topic headings.

I.   *The Judgment Rendered by the Sebastian Chancery Court and now Sought to be Enforced by the Plaintiffs.*   For approximately ten years W. L. Hinton was secretary and manager of the Mutual Savings Building

---

* The Mutual Savings Building & Loan Association, as assignor of the Sebastian Chancery Court judgment, was listed as a party plaintiff and appellee.  Clyde B. Willard, one of the plaintiffs, died pending the present litigation, and the cause as to him was revived in the name of his executrix.  For clarity in detailing the facts in this opinion, we have styled the appellees as "Clyde B. Willard, *et al.*"

& Loan Association of Fort Smith (hereinafter called "Association."). He resigned in 1938, and the Association sued him for an accounting, in the Sebastian Chancery Court. A master was appointed and considerable evidence was taken—all of which is in the record in the present cases. Hinton voluntarily conveyed to the Association certain properties; but even after these conveyances, a decree was entered: (1) returning title from Hinton to the Association to other properties, and (2) awarding the Association a personal judgment against W. L. Hinton for $12,643.27 with interest at 6% until paid. This money judgment was rendered on October 10, 1939, and is the one which the plaintiffs are now seeking to enforce. The only credits on the judgment are: $179.17 on April 9, 1940, and $300 on January 7, 1941.

The judgment was assigned to C. B. Willard and A. F. Hoge, who—along with Hinton—had been officers in the Association. By proper writs of *scire facias* and orders of revivor (§§ 8271-77, Pope's Digest),[1] the judgment was revived by Willard and Hoge, as assignees, on February 27, 1945, and, again, on February 24, 1948. In each of these instances, the writ of *scire facias* was duly served on W. L. Hinton, and also the order of revivor recites the assignment of the judgment by the Association to Willard and Hoge, and the two payments credited thereon as previously mentioned.

One of Hinton's main contentions in the present suits is that these orders of revivor are not *res judicata* against him, and that he is entitled to cross complain against the plaintiffs, Willard and Hoge, in these suits and compel them to account to him now for all of their actions in the liquidation of the Association. Hinton claims (1) that Willard and Hoge, as directors of the Association, were trustees;[2] (2) that Willard and Hoge, in winding up the affairs of the Association after Hin-

---

[1] Sections 29-601 to 29-607, inclusive, Ark. Stat. (1947).

[2] Citing *Hornor* v. *New South Oil Mill*, 130 Ark. 551, 197 S. W. 1163, and *Nedry* v. *Vaile*, 109 Ark. 584, 160 S. W. 880.

ton left, were guilty of neglect as trustees;[3] and (3) that the judgments of revivor in the scire facias actions were not *res judicata* against the cross complaint of Hinton.[4]

We hold against Hinton on the third contention (i. e., *res judicata*), and such holding makes it unnecessary to discuss the other two. From 1939 until 1948 Hinton seemed absolutely indifferent to the affairs of the Association. He moved from Fort Smith to northwest Arkansas, and went into the winery business. Willard and Hoge, as the remaining officers of the Association, were left "with the bag to hold." By borrowing large sums on their own financial standing, they satisfied creditors and other stockholders; and, in order to salvage what they could to apply on their own losses, they took the assignment of the Hinton judgment from the Association. The Association was liquidated, its charter surrendered, and Willard and Hoge revived the judgment as previously recited. If Hinton had desired to question the validity of the assignment of the judgment from the Association to Willard and Hoge, or had wanted to claim on the judgment any *bona fide* credits due him by the Association or by Willard and Hoge, then in any such event, Hinton should have offered such defenses when the writs of *scire facias* were served on him, and before the judgments of revivor were entered.

The purpose of a revivor of a judgment by *scire facias* is to continue the lien of the judgment by the holder thereof for the amount due, less credits. So. ownership of the judgment and the extent of the credits are matters necessarily within the scope of defense in the proceedings to revive by *scire facias*. In Ward v. Sturdivant, 96 Ark. 434, 132 S. W. 204 Mr. Justice FRAU-ENTHAL, speaking for this Court, said—concerning the force and effect of a judgment of revivor based on a writ of *scire facias*:

"That judgment was rendered in a proceeding by scire facias, and, after its rendition, it became as effective

---

[3] Citing *Clark* v. *Spanley*, 122 Ark. 366, 183 S. W. 964, and *Spradling* v. *Spradling*, 101 Ark. 451, 142 S. W. 848.

[4] Citing, *inter alia*, *Biederman* v. *Parker*, 105 Ark. 86, 150 S. W. 397; *Ellis* v. *Caruthers*, 137 Ark. 134, 208 S. W. 425; *Fawcett* v. *Rhyne*, 187 Ark. 940, 63 S. W. 2d 349, and *Lilly* v. *Verser*, 133 Ark. 547, 203 S. W. 31.

as an adjudication as other judgments. In a proceeding to revive a judgment by scire facias the defendant is bound to plead all matters of defense that he has, just as he would in an ordinary suit. The judgment of revival is conclusive against all facts and defenses which existed before its rendition. In 2 Freeman on Judgments, § 448, it is said: ''The effect of a judgment entered upon a scire facias as an adjudication does not differ from that of other judgments. It cannot be collaterally avoided for mere error or irregularity, and, until set aside by some proper proceeding, it conclusively establishes the facts necessary to support it as against all persons properly made parties thereto.' Helms v. Marshall, 121 Ga. 769, 49 S. E. 733; Babb v. Sullivan, 43 S. C. 436, 21 S. E. 277; Witherspoon v. Twitty, 43 S. C. 348, 21 S. E. 256.''

In Ward v. Sturdivant, *supra,* it was attempted in a subsequent proceeding to raise the issue of defect of parties in the order of revivor, and this Court said: ''But, having failed to raise any objection to the party in whose name the judgment of revivor was rendered, the parties are now concluded thereby; . . .''

Holdings in other jurisdictions are in accord with the Arkansas holdings as to the effect of the writ of *scire facias* and the order of revivor. See 47 Am. Juris. 482.

We therefore conclude that when the defendant— by offering no defense to the writs of *scire facias* and by allowing the Sebastian Chancery Court to enter the uncontested orders of revivor in 1945 and 1948—is bound by the rules of *res judicata,* and cannot be heard in the present suits to say either that Willard and Hoge are not the owners of the judgment, or that Hinton is entitled to credits (other than the two entered on the judgment) for any matters prior to the 1948 order of revivor.

II. *W. L. Hinton's Ownership of the Winery and the Other Properties in Washington and Benton Counties.* On October 6, 1939, (four days before the Sebastian Chancery Court judgment was rendered) Hinton and his wife and daughter (all of whom are defendants) signed and placed of record a limited partnership agree-

ment for the ownership and operation of "The W. L. Hinton Winery." This instrument recited the interest of the parties to be: 98% to Mrs. Hinton and the daughter, and 2% to W. L. Hinton. Furthermore, after 1939, title to various tracts of property in Washington and Benton Counties was taken either in the name of the winery or in the name of Mrs. W. L. Hinton. In these suits the plaintiffs seek to enforce the lien of their judgment not only against the winery, but also against the other property held in the name of Mrs. Hinton. The plaintiffs claim that all of these transactions were fraudulent as against the judgment rendered against Hinton in favor of the Association in 1939.

It was conceded in the evidence—in fact, Mrs. Hinton so testified—that Mr. Hinton was insolvent when he moved from Fort Smith. Our cases hold that when an insolvent debtor deals with the members of his family, such transactions are to be closely scrutinized to determine whether they were to evade the payment of the debts of the insolvent. See Quisenberry v. Davis, 136 Ark. 115, 206 S. W. 139; Brady v. Irby, 101 Ark. 573, 142 S. W. 1124, Ann. Cas. 1913E, 1054; Driggs v. Norwood, 50 Ark. 42, 6 S. W. 323, 7 Am. St. Rep. 78, and other cases collected in West's Arkansas Digest, "Fraudulent Conveyances," § 104.

The evidence on this fraudulent conveyance phase of the case is as voluminous as that on the other topic previously mentioned, but it was shown that W. L. Hinton was in every respect the moving spirit and controller of the destinies of the winery. There was some effort to show that Mrs. Hinton had obtained some money from her father's estate that went into the enterprise; but from a full review of the entire evidence— which we do not lengthen this opinion by detailing— we conclude that this limited partnership agreement was a badge of fraud conceived and executed by W. L. Hinton in his scheme to place his property beyond the reach of the judgment that he is here seeking to defeat. Likewise, we conclude that the title to the various tracts of property in Washington and Benton Counties taken in the name of Mrs. W. L. Hinton was really owned by

W. L. Hinton, and the properties are subject to the lien of the plaintiff's judgment. The Chancery Courts so found, and we affirm such portion of the decrees.

III. *Defendant's Claim of Homestead Rights in Washington County.* Mr. and Mrs. W. L. Hinton claimed that they had acquired the right of homestead in certain property in Washington County. Our cases on homestead hold that there must be the intent to occupy in good faith, as well as the actual occupancy in good faith, before the homestead right attaches against pre-existing creditors. See Gibbs v. Adams, 76 Ark. 575, 89 S. W. 1008; Chastain v. Arkansas Bank & Trust Co., 157 Ark. 423, 249 S. W. 1; Bank of Quitman v. Mahar, 193 Ark. 1111, 104 S. W. 2d 800; Shell v. Young, 78 Ark. 479, 95 S. W. 798; Gebhart v. Merchant, 84 Ark. 359, 105 S. W. 1034; and other cases collected in West's Arkansas Digest, ''Homestead,'' §§ 31-35, inclusive.

Among other salient facts, it was shown that Mr. and Mrs. Hinton made only sporadic visits to the Washington County property; that they spent most of their time in Benton County; and that both of them had voted in the election in Benton County. We therefore affirm the decree of the Chancery Court, which denied the Hintons the claimed homestead rights in the property in Washington County.

IV. *Mrs. Hinton's Rights to the Proceeds of the Sale of the Sebastian County Homestead.* On this one point we hold with the appellants. When the Association obtained its judgment in 1939 the Hintons had a homestead in Sebastian County. On January 7, 1941, for a consideration of $300, the Association released the lien of its judgment on the property that was or had been the homestead of the Hintons in Sebastian County; and the release of the lien on this particularly described property was endorsed on the margin of the record where the judgment was recorded. After such release the Sebastian County homestead property was sold by Mr. and Mrs. Hinton, and she has in cash the proceeds of that sale, which amounted to several thousand dollars.

The Chancery Courts, in the decrees from which come these appeals, held that this sale and delivery of the money to Mrs. Hinton "was for the purpose of defeating these plaintiffs in their rights as judgment creditors," and ordered all of such money in the hands of Mrs. Hinton to be held to apply on the plaintiff's judgment. The plaintiffs seek to defend this portion of the decree by citing such cases as Tucker v. Stell, 169 Ark. 1, 272 S. W. 864, in which it is stated that the proceeds from the sale of the homestead, if not reinvested in another homestead, become personal property and lose the immunity of homestead exemption. Of course, the judgment lien could not have been enforced against the property as long as it remained homestead, and was claimed as such, but the holding in Tucker v. Snell, *supra,* is not applicable here. The Association, for a valuable consideration, released the lien of its judgment on this Sebastian County property, and thereby enabled Hinton to sell the property free of any subsequent attempt of the judgment creditor to seize the released property. Hinton and wife did sell the property, and he gave her his part of the money from the sale.

We conclude that, by receiving the said $300 and contractually releasing the lien of its judgment on the specific property, the Association and the plaintiffs herein (as its assignees) are estopped to claim any lien on the proceeds of the sale of the Sebastian County homestead. So we hold that the money held by Mrs. Hinton, and conceded by all parties to be the proceeds of the sale of the property on which the lien had been released, is exempt from seizure in this fraudulent conveyance suit.

We therefore reverse only those portions of the decrees, here appealed from, which concern the money in Mrs. Hinton's hands admitted to have been received by her from the sale of the Sebastian County homestead. In all other respects the decrees are affirmed, and all costs are assessed against the defendants.

212

McFADDIN, J. (on rehearing). Appellants ask us to incorporate in our opinion a finding that appellees neither have nor claim any interest in certain property in Sebastian county which W. L. Hinton conveyed to Grace Nowlin, trustee. Even though the appellees are willing to stipulate to such effect, nevertheless, we decline to make such finding, because title to this Sebastian county real estate was not adjudicated in these two cases. If appellants desire to determine title to such Sebastian county real estate, then better practice would be to proceed in that venue.

The petition for rehearing is denied in all respects.