RICE v. BEAVERS.

4-8520                                          212 S. W. 2d 30

Opinion delivered June 21, 1948.

Rehearing denied July 5, 1948.

*Boyd Tackett* and *Shaver, Stewart & Jones,* for appellant.

*Jerry Witt* and *Rose, Dobyns, Meek & House,* for appellee.

SMITH, J. L. L. Beavers is the president of the Montgomery County Bank, and was the owner of a majority of its capital stock. Royal A. and J. A. Rice, who are brothers, are natives of that county. They removed to New York, where they were engaged successfully in various business enterprises and accumulated a considerable amount of surplus cash which they sought to invest. In all the transactions hereinafter referred to Royal A. Rice acted for himself and for his brother and mother, and he will be referred to as Rice. He and his brother became nostalgic and decided to return to their old home and they made considerable investments in timber lands in that county. Rice ascertained that the bank was a prosperous institution, and he proposed to Beavers to buy a controlling interest in the bank. It is undisputed that in all the negotiations Rice very explicitly stated that he did not want to buy any of the bank's stock unless he could buy a controlling interest, and he proposed to purchase that interest from Beavers who individually owned a majority of the stock. Beavers testified that he was not anxious to sell, and would not have sold except that Rice represented that he wanted the bank stock for investment purposes only. Rice told him that he was not a banker, and knew nothing about operating a bank, and would not buy the stock unless Beavers would agree to remain in charge of it. The testimony is conflicting as to whether Rice negotiated with any of the stockholders except Beavers, but the court below found the fact to be that Rice made the same representations to certain other stockholders who have intervened in the case. In any event, we think the testimony sustains the finding made by the court below that the sale was induced by Rice's representation that he wanted the stock for investment

purposes only, and that he had no intention of taking control of the bank and would not buy unless Beavers agreed to continue as president.

The negotiations for the purchase of the stock began in April or May, 1945, and were consummated by the sale thereof some weeks later. Beavers consulted three of the larger stockholders, who were directors, and it was agreed that these four stockholders would together sell a majority interest, which was apportioned as follows:

Beavers and family ...................300 shares
Whittington ........................................... 90 shares
Standridge ..........................................100 shares
Hickey .......................................................... 11 shares

making a total of 501 shares, which was a majority of the stock, as there are only 1,000 shares. The stock thus sold was not all of the stock owned by any one of the persons above named. The par value of the stock was $25 per share, and its book value was $33 per share, and Rice paid $50 per share for the stock.

After the purchase and the transfer of the stock, Beavers published in a local paper a notice of the sale, in which it was stated that Rice had bought the stock for investment purposes only, and that there would be no change in the management of the bank.

The by-laws of the bank provided for an annual meeting of the stockholders on the second Tuesday in January, and this meeting was held in 1946 without incident, as all officers of the bank were reëlected, but friction soon arose which the Bank Commissioner, who had been appealed to by both Beavers and Rice, was unable to adjust. Rice complained that unsafe loans had been made to certain of the directors, and he demanded that a loan committee consisting of three members be constituted, of which he should be one, and that any member of the committee should have the right to veto any loan. There were other points of disagreement and Rice announced his intention to change the management, although he disclaimed any intention of having himself elected president, or his brother elected cashier. This report became

current and general dissatisfaction arose among both stockholders and depositors and a number of accounts were closed and there were withdrawals of deposits from October 7, 1946, to June 26, 1947, amounting to $236,-074.84.

Rice had incurred many animosities in the vicinity and a number of witnesses testified that if he took charge of the bank, deposits would be withdrawn in numbers and amounts which would require the bank to close its doors.

Notice of the 1947 stockholders' meeting was given, which did not contain the notice required by the by-laws, upon which Rice insisted, that certain changes in the by-laws would be proposed. This meeting was not held. On the morning of the day on which it was to be held a large crowd, which Rice referred to as a mob, assembled near the bank and a committee of citizens was appointed to wait on Rice to protest any change in the bank management. Rice did not attend the meeting and it was not held, because he owned or controlled a majority of the stock.

Rice demanded that notice be given of a meeting to be held at a later date, and when this demand was not complied with he filed suit to compel Beavers to call a stockholders' meeting. Beavers filed an answer in which he alleged that the sale of the stock had been induced and procured through the false and fraudulent representation made by Rice that he wished to buy the stock for investment purposes and without the intention of assuming control of the bank. He prayed that the sale be rescinded. The three directors above named who had joined Beavers in the sale of a portion of their stock, filed interventions containing the same allegations as the answer of Beavers, to the effect that they had been induced to sell their stock by the false representation above mentioned and they too prayed the rescission of the sale.

The court made the finding that the representations of Rice in regard to his intentions in buying the stock were false when made and the relief prayed was granted,

and the sale was ordered rescinded upon the tender and payment to Rice of the money he had paid for the stock, with interest thereon, and this appeal is from that decree.

The majority do not concur in the view that the sale of the stock was procured through fraud. The fact is undisputed that Rice imposed the condition before buying any of the stock, that a controlling interest should be sold him and although the finding is not questioned that Rice represented that he was buying the stock for investment purposes only, the fact remains that he was insistent that a majority of the stock be sold him, and this was done. The sellers of the stock had no right to assume that Rice had agreed that he would never at any time, or under any circumstances, assert the rights which the ownership of the majority of the stock gave him. This is not a case where a portion of the stock, less than a majority thereof, was sold, but is a case where the majority of the stock was sold and it was sold upon a condition that a controlling interest be sold. The correspondence offered in evidence makes clear the fact that Rice was demanding the right of control, whether he exercised the right or not. There was offered in evidence a letter from Rice to the cashier of the bank, who conducted and consummated the sale, stating that he would not buy less than a controlling interest, as he did not want to be left out on a limb, as he expressed it, meaning, of course, without control.

Nor does it appear that Rice acted capriciously in making the demands which he did make in regard to the management of the bank. There was a transaction which had been reported to the Bank Commissioner which apparently required an explanation, which was not made because of an objection to the explanation by counsel of the appellees which the court sustained. This related to a loan made to one Carpenter about which Rice had complained to the Bank Commissioner. A loan of $1,400 was made to Carpenter on March 30, 1944, and another loan of $400 was made on April 25, 1944. The bank records apparently showed that Carpenter had paid interest amounting to $22.16 on one loan and interest amounting

to $4.75 on the other, and that Carpenter paid $2,000 by check on the bank in satisfaction of the total loan of $1,800, which excess payment was not reflected by the records of the bank. There may have been an explanation, but none was made.

It may be true, as the court found, that hostility to Rice and objections to his taking charge of the bank are such that withdrawals would be made in such amount and in such rapidity as to embarrass and possibly close the bank, but even so Rice has the right to demand that a stockholders' meeting be held for the transaction of any business that may be properly considered at such a meeting as provided by § 2188, Pope's Digest. It is true that this meeting cannot be held at the time provided by the by-laws, but that is no reason why it should be pretermitted. It may yet be called and should be. Fletcher Cyclopedia Corporations, Vol. 5, Private Corporations, p. 22.

The court ordered the sale of stock rescinded upon condition that Rice be repaid the purchase price of the stock with interest thereon. The proper tender of this money was made, which Rice declined to accept, whereupon the court ordered that he be enjoined from selling or otherwise disposing of the stock.

The decree will be reversed and the cause will be remanded with directions to set aside the order rescinding the sale of the stock, and to call a stockholders' meeting, and the order restraining Rice from selling his stock will be revoked. All costs will be assessed against appellees.