DRAINAGE DISTRICT No. 16, MISSISSIPPI COUNTY
*v.* KING.

4-8705                                                      216 S. W. 2d 799

Opinion delivered January 24, 1949.

*Shane & Fendler,* for appellant.

*Claude F. Cooper* and *Frank C. Douglas,* for appellee.

MINOR W. MILLWEE, Justice. This is a suit by Drainage District No. 16 of Mississippi County to cancel its deed to W. H. Hutton, and also a deed from Hutton to two of his children, on the ground of fraud practiced by Hutton in procuring the conveyance from the district.

The pleadings and proof disclose that the two-acre tract of land involved is situated in District No. 16 which was organized in 1917. W. H. Hutton was listed as owner of the tract in several suits by the district to foreclose its lien for delinquent assessments for the years 1939, 1940, 1942 and 1944. The district purchased at these foreclosure sales and deeds were subsequently issued to it when the land was not redeemed. In disposing of lands which it acquired title to by foreclosure, the district pursued the commendable policy of allowing preference in the matter of purchase and redemption to the respective owners whose lands had forfeited for delinquent assessments. In line with this policy the attorney for the district, early in January, 1947, wrote W. H. Hutton a form letter advising him of the delinquencies against the two-acre tract and further stating: "The District now has a deed to your property and it will cost you $10.37 for a Redemption Deed. If you have not paid the tax, send us a money order or your check (if check is on out of town bank, add exchange) before February 15, 1947. Upon receipt of money, we shall send you a quitclaim deed.

"If this is not your property, please notify us."

On January 25, 1947, Hutton replied as follows: "I'm mailing you $10.37 for the deed to my property. Please forward this to me at Parma, Mo."

On January 29, 1947, the district issued and mailed to Hutton its quitclaim deed which he recorded. On May 7, 1947, the district directed a registered letter to Hutton stating that it had received information that parties other than Hutton were owners and entitled to priority of purchase of the land from the district; and that a mutual mistake had been made in the conveyance to Hutton. There was enclosed a refund of the amount paid the

district and a request that he execute a quitclaim deed, also enclosed, reconveying the land to the district. This letter was returned to the district marked, ''Refused''. On May 23, 1947, Hutton conveyed the tract to his two married daughters and this deed was recorded on June 2, 1947.

On October 31, 1947, the district instituted this suit alleging the death of W. H. Hutton in August, 1947, and making Hutton's four children, as his sole heirs at law, party defendants. A demurrer to the amended complaint was treated as a motion to make more definite and certain as to ownership of the land, and, as such, was sustained. In response to the motion the district filed a second amendment to the complaint alleging that Max and William Borowsky held record title to the property under a commissioner's deed issued to them May 15, 1931, in mortgage foreclosure proceedings which the Borowskys maintained against W. H. Hutton and wife. Defendants then answered with a general denial. The chancellor found the issues in favor of defendants and dismissed the complaint of the district for want of equity.

The district earnestly insists that the evidence conclusively shows that Hutton obtained the deed by misrepresentation of ownership which he knowingly made for the fraudulent purpose of depriving the district of its property. It is argued that the statement by Hutton in the letter of January 25, 1947, requesting the district to mail the ''deed to my property'', and his subsequent actions, conclusively show that he was not the true owner of the land and that he, therefore, obtained the deed by a false representation of ownership.

It was shown by the record of the foreclosure proceedings against Hutton and his wife by the Borowskys that the latter acquired title to the two-acre tract, and also to Lot 5 in the same section, under the commissioner's deed of May 15, 1931. When asked to state the name of the owner of the record title to the two-acre tract without ''giving any opinion as to tax titles'', an abstractor, called on behalf of the district, testified that the Borowskys were the present owners of the record

title under the 1931 mortgage foreclosure proceedings. Now this evidence shows record ownership in the Borowskys, but it does not necessarily follow that W. H. Hutton was not the real owner of the property in January, 1947, when he replied to the letter of the district.

In this connection there is an absence of proof as to possession of the two-acre tract at any time. It is not shown that the Borowskys have ever been in possession of the land or paid any taxes thereon. If they failed to take possession following their purchase in 1931 and Hutton remained in possession, the latter might have thereby acquired title by adverse possession and occupied the status of true owner when he wrote the letter of January 25, 1947. Apparently Lot 5 did not forfeit for the drainage district taxes and the Borowskys may have taken possession and paid the taxes on this lot and wholly abandoned the two-acre tract. The Borowskys are not parties to the instant suit and have not intervened although they appear to have had knowledge of the proceeding.

It is well settled that fraud is never presumed, but must be affirmatively proved by the party who alleges and relies on it. *Hembry* v. *Cornelius*, 182 Ark. 417, 31 S. W. 2d 539; *U. S. Ozone Co.* v. *Morrilton Ice Co.*, 186 Ark. 485, 54 S. W. 2d 282. The early case of *Irons* v. *Reyburn*, 11 Ark. 378, is authority for the proposition that "when an act does not necessarily import fraud, and may as well have occurred from a good as a bad motive fraud will not be inferred."

We conclude that the district failed to meet the burden resting upon it of showing the falsity of Hutton's representation of ownership when he wrote the letter of January 25, 1947, and that the chancellor did not err in dismissing the complaint. This view of the case makes it unnecessary to decide whether the representation of ownership, though falsely and fraudulently made, resulted in injury to the district.

Affirmed.