Josephine RICE, Plaintiff,

v.

Royal A. RICE, J. A. Rice, Commercial National Bank, National Banking Association, Bank of Montgomery County and Montgomery County Insurance Agency, Defendants.

Civ. A. No. 579.

United States District Court
W. D. Arkansas, Hot Springs Division.

Nov. 19, 1954.

---

1. In Louisiana the prescriptive period for bringing tort actions is one year. LSA–C.C. art. 3536.

Wootton, Land & Matthews, Hot Springs, Ark., Tom Kidd, Murfreesboro, Ark., for plaintiff.

Shaver, Tackett & Jones, Texarkana, Ark., for all defendants except Commercial Nat. Bank.

Townsend & Townsend, Little Rock, Ark., for Commercial Nat. Bank.

JOHN E. MILLER, District Judge.

This is a suit instituted by plaintiff on March 16, 1954, in which she seeks a recovery against the defendant, Royal A. Rice, hereinafter referred to as R. A. Rice, based upon certain judgments heretofore obtained by plaintiff against the said defendant in the State of New York. In her original complaint plaintiff sought to recover the sum of $12,008.19, being the amount of a judgment obtained by plaintiff against R. A. Rice on February 24, 1954, in the Supreme Court of the State of New York, Westchester County, in the City of White Plains. Plaintiff further alleged that R. A. Rice owned an interest in the Montgomery County Insurance Agency, and also owned certain shares of stock in the Bank of Montgomery County, said shares having been transferred by R. A. Rice to the defendant, J. A. Rice, for the purpose of hindering, delaying and preventing the collection of plaintiff's New York judgment. Plaintiff sought judgment against R. A. Rice in the sum of $12,008.19; that the transfer of the stock be set aside; and that the assets of J. A. Rice be marshalled to free the certificates of stock owned by R. A. Rice from the lien of a pledge of a portion of the said stock to the defendant, Commercial National Bank.

On April 7, 1954, the defendants, R. A. Rice, J. A. Rice, Bank of Montgomery County, and Montgomery County Insurance Agency, filed an answer admitting the recovery of the $12,008.19 judgment by plaintiff, but denying that the Court had jurisdiction to render said judgment. The said defendants denied that R. A. Rice owned any interest in the Montgomery County Insurance Agency and denied that he had transferred any stock in an effort to prevent the collection of plaintiff's judgment.

The defendant, Commercial National Bank, on April 10, 1954, filed its answer alleging that it had a valid lien upon the 311.4 shares of stock of the Bank of Montgomery County that had been pledged to it by J. A. Rice.

On September 17, 1954, plaintiff amended her complaint to include three additional judgments she had previously obtained against R. A. Rice, making the total amount sued for $19,821.08. Plaintiff also alleged that R. A. Rice was the owner of an undivided one-half interest in certain lands in Montgomery County, Arkansas, and prayed that said interest be made subject to the payment of plaintiff's judgments. Plaintiff further prayed that R. A. Rice be declared to be the owner of 434 shares of the stock of the Bank of Montgomery County, and that said stock be subjected to the payment of plaintiff's claim.

Upon these issues, the case was tried to the Court, without a jury, on October 18, 1954, and at the conclusion of the trial the Court took the case under advisement pending receipt of briefs from the attorneys for the respective parties.

The briefs have been received, and now the Court, having considered the pleadings, ore tenus testimony of the witnesses, depositions, exhibits, stipulations, and briefs of the parties, makes and files herein its findings of fact and conclusions of law, separately stated.

### Findings of Fact

#### No. 1.

The plaintiff is a citizen and resident of the State of New York. The defendants are all citizens and residents of the State of Arkansas. The amount in controversy, exclusive of interest and costs, exceeds the sum of $3,000.

#### No. 2.

The plaintiff and the defendant, R. A. Rice, were married in 1910 in the State of New York. They lived together until 1936, when they separated, and on October 16, 1940, plaintiff obtained a decree in the Supreme Court of Westchester County, awarding her separate maintenance in the sum of $10 per week. On August 3, 1943, the decree was modified by increasing the award to $15 per week. On August 4, 1951, the decree was again modified and the award was increased to $100 per week.

#### No. 3.

The defendants, R. A. Rice and J. A. Rice, are brothers, and prior to 1944 had been engaged in business together. On May 20, 1944, the said defendants, together with their mother, Mrs. Lula V. Rice, entered into a partnership agreement which purportedly gave the parties the following respective interests: Lula V. Rice, 50%; Joel A. Rice, 40%; and Royal A. Rice, 10%. This agreement, of course, was entered into subsequent to the time plaintiff obtained her decree in 1940, as well as the modification in 1943. The parties operated as a partnership styled Rice Bros. Mfg. Co. until June 15, 1945, at which time they purchased the controlling interest in the Bank of Montgomery County in Montgomery County, Arkansas. The sum of $25,050 was paid for 501 shares of the stock of said bank, the total number of outstanding shares being 1,000. The money was paid by check drawn upon the account of Rice Bros. Mfg. Co.

The 501 shares were first issued to R. A. Rice and J. A. Rice jointly. In December, 1946, the stock was divided as follows: R. A. Rice, 244 shares (evidenced by Certificate Nos. 132 for 43 shares; 134 for 52 shares; 140 for 136 shares; and 13 shares of Certificate No. 136, which originally contained 43 shares but was divided at that time); J. A.

Rice, 244 shares (evidenced by Certificate No. 130 for 227 shares; and 17 shares of Certificate No. 136); and Mrs. L. V. Rice, 13 shares (being taken from Certificate No. 136). On December 16, 1946, R. A. Rice executed a promissory note, payable to J. A. Rice on demand, in the sum of $10,935, without interest, purportedly executed in consideration of the transfer of "243 Shares Bank Stock." During this time, or shortly thereafter, Mrs. L. V. Rice purchased an additional 7.2 shares of stock, making her total ownership 20.2 shares.

After the purchase of the stock by the Rice family, a controversy developed between them and the Bank officers, culminating in the case of Rice v. Beavers, 213 Ark. 656, 212 S.W.2d 30. The decision in that case left the way clear for the Rice family to take over the management of the Bank, which they did on August 3, 1948. At that time the officers were: R. A. Rice, President; J. A. Rice, Vice President; Amos Horn, Secretary-Treasurer and Cashier. Mrs. L. V. Rice became a director and remained in that capacity until her death in 1950, at which time her 20.2 shares were transferred to Sam G. Smith and he became a director.

As reflected by the annual reports made by the defendants, R. A. Rice and J. A. Rice, to the State Bank Commissioner, together with the testimony of Oscar W. Luebben, Certified Public Accountant, the stock ownership of the said Rice brothers remained substantially the same from December, 1946, until July 17, 1952. In the meantime, plaintiff had obtained two judgments against R. A. Rice in the Supreme Court of Westchester County, New York, one in the amount of $1,179.-02 rendered on October 26, 1951, and one in the amount of $2,320.22 (including costs) rendered on January 8, 1952. On January 3, 1952, plaintiff instituted an action in the Circuit Court of Garland County, Arkansas, upon the judgment entered by the New York Court on October 26, 1951. Then, on February 13, 1952, plaintiff filed suit in the Circuit Court of Garland County upon the New York judgment rendered on January 8, 1952.

### No. 4.

While R. A. Rice was faced with the efforts of plaintiff to collect the judgments she had obtained against him, he had a conversation with Amos Horn, Secretary-Treasurer of the Bank, about the matter. Horn advised him to attempt to settle the controversy with plaintiff, but R. A. Rice stated that he did not intend to pay anything else to plaintiff, and that he intended to transfer his stock to his brother, J. A. Rice.

During this time, R. A. Rice and John Beavers, with the assistance of Beavers' attorney, Alfred Featherstone, negotiated for the purchase by the Rice brothers of 323.4 shares of the Bank stock still owned by the Beavers family and their friends. This negotiation resulted in the sale to the Rices of the 323.4 shares in July of 1952. At that time the two suits against R. A. Rice were pending in the Garland County Circuit Court, and the Rice brothers evidently thought it would be wise to have everything possible placed in the name of J. A. Rice rather than R. A. Rice.

On July 15, 1952, R. A. Rice and J. A. Rice issued a joint financial statement to the Commercial National Bank of Little Rock, Arkansas, said statement showing ownership of 509 shares of Bank stock and a Net Worth of $72,700. This financial statement was signed "R. A. & J. A. Rice, by R. A. Rice." On July 16, 1952, a note in the sum of $12,936 was executed by J. A. Rice and R. A. Rice, payable to the Commercial National Bank. The note appears on its face to be the joint note of the said Rice brothers, but the records of the Commercial National Bank indicated that the Bank considered R. A. Rice's signature on the note to be an endorsement. However, both R. A. Rice and J. A. Rice were equally interested in the purchase of the stock. The note was secured by the pledge of certain stock of the Bank of Montgomery County then in the name of J. A. Rice. The purchase price of the 323.4 shares of Beavers' stock was paid on July 17, 1952,

with the money obtained from the Commercial National Bank, and said shares were placed in the name of J. A. Rice. On the same date, R. A. Rice, without consideration, transferred all his stock to J. A. Rice, who, in turn, re-transferred 20 shares to R. A. Rice in order that he would still be qualified to serve as an officer and director of the Bank.

In an effort to make the records reflect a bona fide transaction, on July 20, 1952, R. A. Rice executed a note in the sum of $1,000, payable to J. A. Rice, without interest, said note purportedly being in consideration of the transfer of 20 shares of the Bank stock from J. A. Rice to R. A. Rice. Also, upon the back of the note in the sum of $10,935 executed by R. A. Rice on December 16, 1946, payable to J. A. Rice, the following penciled notation appears: "Paid 7/12–52 J. A. Rice."

As a result of these transactions, as of December 31, 1952, the annual report made to the State Bank Commissioner revealed that 789.4 shares of the Bank stock were in the name of J. A. Rice and only 20 shares were in the name of R. A. Rice.

Early in 1953, Amos Horn learned that he could purchase 72.4 shares of the bank stock then owned by the Whittingtons, although they would not sell the stock to the Rices. Horn conferred with R. A. Rice and was advised to lose no time in purchasing the said stock. On or about April 9, 1953, Horn purchased the 72.4 shares of stock with money secured from the Commercial National Bank upon the execution by Horn of a note in the sum of $3,620, payable to said Commercial National Bank. The note was secured by the pledge of the 72.4 shares of stock.

On May 4, 1953, Horn resigned from his position with the Bank of Montgomery County. At that time he agreed with R. A. Rice to turn over his 72.4 shares of stock to the Rices if they would execute a new note to the Commercial National Bank in lieu of his note then held by said Bank. On May 11, 1953, a note in the sum of $3,620 payable to the Commercial National Bank was executed by J. A. Rice and endorsed by R. A. Rice, and upon the same date the note previously executed by Horn in the same amount was marked paid by the Commercial National Bank. The 72.4 shares of stock were then placed in the name of J. A. Rice.

R. A. Rice continued as President of the Bank of Montgomery County until February 1, 1954, when he resigned. On that date he transferred his remaining 20 shares of stock to J. A. Rice, without consideration. In keeping with the effort to make the records reflect a bona fide transaction, the following notation was placed upon the $1,000 note which had been executed by R. A. Rice on July 20, 1952: "Paid 2/1—53 J. A. Rice."

At the present time none of the stock of the Bank of Montgomery County is in the name of R. A. Rice. J. A. Rice is the record holder of 868 shares of said stock, 311.4 shares of which are pledged to the Commercial National Bank as security for the $12,936 note executed by J. A. Rice and R. A. Rice, said note having been renewed twice and now being due February 2, 1955.

### No. 5.

On December 31, 1945, the defendants, R. A. Rice and J. A. Rice, purchased certain lots in Mount Ida, Arkansas. R. A. Rice handled the transaction, but title was taken in the name of J. A. Rice. Some time later one of the grantors either sued or threatened to sue in an effort to have the deed set aside, and on April 10, 1948, the lots were conveyed to Amos Horn, without consideration, in order that they would be in the hands of a third party. It was not clear from the evidence whether the lots were ever reconveyed to the Rices, but it was clear that Horn paid no consideration for the lots and merely held them for the benefit of J. A. Rice.

### No. 6.

R. A. Rice was President of the Bank of Montgomery County from August 3, 1948, until February 1, 1954. During that time he actively controlled the affairs of the Bank. His salary at the beginning

was $3,000 per annum, but was later raised to $4,200 per annum. At first R. A. Rice had a checking account in his own name, and J. A. Rice had authority to draw checks upon that account. R. A. Rice's salary checks were deposited in the account. Later, in 1952, the account was placed in the name of J. A. Rice, and R. A. Rice had authority to draw checks upon that account. Thereafter the salary checks of R. A. Rice were placed in the said account in the name of J. A. Rice. The said brothers also had a safety deposit box, both of them having access to said box.

The Bank of Montgomery County carried a correspondent bank account with the Commercial National Bank. On August 3, 1948, the Commercial National Bank received a signature card of approved signatures for said account, the said card bearing the signature of R. A. Rice as President and Amos Horn as Cashier. Subsequent to that two later signature cards were received, one on December 17, 1948, and one on June 2, 1953. The signature of R. A. Rice appeared on both the cards, and as of the date of the trial the signature card of June 2, 1953, was still in effect.

### No. 7.

In 1948, R. A. Rice, J. A. Rice, and Amos Horn formed a partnership known as the Montgomery County Insurance Agency. The business was carried on in the Bank building, and the said partners each had a one-third interest in the Agency. When he left the bank in 1953, Horn gave his share of the agency to the Rice brothers, and at the present time R. A. Rice and J. A. Rice each own a one-half interest in the Montgomery County Insurance Agency.

### No. 8.

The two suits instituted by plaintiff against R. A. Rice in the Garland County Circuit Court were ultimately decided in plaintiff's favor by the Supreme Court of Arkansas, 262 S.W.2d 270. On January 5, 1954, the Garland County Circuit Court entered judgment in favor of plaintiff and against R. A. Rice in the total sum of $3,499.24. The judgment was recorded in the office of the Circuit Clerk of Montgomery County on January 29, 1954. On January 29, 1954, Wilbur Tidwell, Sheriff of Montgomery County, attempted to execute upon the property of R. A. Rice, but found no property owned by him and made a nulla bona return.

On February 24, 1954, plaintiff obtained a judgment against R. A. Rice in the Supreme Court of Westchester County, New York, in the sum of $12,008.19, including interest and attorney's fee. On September 28, 1954, plaintiff obtained a judgment against R. A. Rice in the same Court in the amount of $3,885.40, including interest and attorney's fee. Both of these judgments remain unpaid.

### No. 9.

It appears that R. A. Rice and J. A. Rice were the only children of Mrs. Lula V. Rice. J. A. Rice was never married, and he lived with his mother until her death in 1950. There was some evidence that Mrs. Lula V. Rice executed a will, but no will was ever probated, and apparently R. A. Rice and J. A. Rice took charge of whatever assets she owned at the time of her death.

R. A. Rice is 67 years of age and J. A. Rice is 69 years of age. They have been in business together in various enterprises for approximately 50 years. R. A. Rice has always been the active manager of their various businesses, and they have been equal partners as to profits and losses. This is demonstrated both by their statements and their actions. R. A. Rice made a number of statements to Amos Horn to the effect that he and his brother had always been fifty-fifty in everything, and that what one owned the other owned. Also, in the case of Rice v. Beavers, 213 Ark. 656, 212 S.W. 2d 30, R. A. Rice testified that he and his brother had always been fifty-fifty. (This testimony was admitted during the trial for impeachment purposes). To corroborate these statements we have the fact that R. A. Rice and J. A. Rice have access to the same safety deposit box;

they both have checking authority on the same account; they executed a joint financial statement for the purpose of obtaining a loan; they originally took the stock of the Bank in their joint names; they had and now have the same interest in the Insurance Agency (at first each owned one-third and now each owns one-half); and other factors such as their failure to make any specific legal division of their mother's property after her death, no doubt because they intended to and did divide equally whatever she owned. Their actions, together with the statements of R. A. Rice, are convincing that the brothers were and are equal partners in their business ventures and in their stock ownership.

### No. 10.

Although R. A. Rice has resigned as President of the Bank, he still occupies the same desk in the Bank that he used while he was President, and he acts in an advisory capacity with respect to the business of the Bank. As of the date of the trial, he still had checking authority upon the account of J. A. Rice and upon the account of the Montgomery County Insurance Agency. And J. A. Rice testified that his stock certificates were endorsed in blank so that in the event of his death his brother, R. A. Rice, could fill in the stock certificates and would then own them.

All the facts and circumstances in evidence lead to one conclusion, that is, that R. A. Rice and J. A. Rice each had and now have a one-half interest in the Montgomery County Insurance Agency; and in the 868 shares of Bank stock now in the name of J. A. Rice; and that the placing of this property in the name of J. A. Rice was done for the purpose of hindering, delaying and defeating the plaintiff in the attempted collection of her various judgments against R. A. Rice.

### No. 11.

By placing all his property in the name of J. A. Rice, R. A. Rice has attempted to render himself insolvent. The only income R. A. Rice now admits having is his old age benefits under the Social Security Act.

### No. 12.

There was some testimony concerning a business venture known as the Royal Lumber Company. The evidence was not clear as to when the company was started or when it terminated, although R. A. Rice testified that he lost a substantial amount of money in that venture. However, both R. A. Rice and J. A. Rice had checking authority upon the account of the Royal Lumber Company, and no doubt were jointly engaged in that venture. Thus, if a loss was sustained in that business, it would have been the loss of both of the brothers and not merely the loss of R. A. Rice.

### No. 13.

None of the transfers of stock made by the Rice family were recorded in the office of the Circuit Clerk of Montgomery County, Arkansas, and no applications were made to the State Banking Department for permission to transfer said stock.

### No. 14.

Plaintiff has recovered four judgments against R. A. Rice in the Supreme Court of Westchester County, New York, said judgments totaling the sum of $19,392.-83. These judgments remain unpaid, and the said R. A. Rice has no property in his own name upon which execution may be levied.

### Discussion

Plaintiff contends "that the actions of R. A. Rice reflect a deliberate scheme and design on his part to divest himself of all apparent assets, while participating in the purchase of additional stock and management but to place all of his assets in the name of J. A. Rice in order that he might continue to enjoy the fruits thereof, immune from the plaintiff's judgments."

Plaintiff further contends that conveyances made by an embarrassed debtor to a member of his family or a near relative, when voluntary, are presumed fraudulent; that the transfers from R. A. Rice to J. A. Rice were fraudulent and should

be set aside by the Court; and that plaintiff should have judgment against R. A. Rice for the total sum of the four New York judgments.

Defendants contend that fraud is never presumed and that the burden is upon plaintiff to prove fraud by evidence that is clear and convincing; that none of the transfers complained of by plaintiff were fraudulent; and that the only property owned by R. A. Rice is 23.4 shares of stock of the Bank of Montgomery County.

 It is true that fraud is never presumed, and that the burden rests upon one asserting fraud to prove such fraud by evidence that is clear and convincing. Harris v. Shaw, Ark., 272 S.W. 2d 53; Ellis v. Ellis, 220 Ark. 639, 249 S.W.2d 302; Drainage District No. 16, Mississippi County v. King, 214 Ark. 481, 216 S.W.2d 799; Biddle v. Biddle, 206 Ark. 623, 177 S.W.2d 32; Green v. Bush, 203 Ark. 883, 159 S.W.2d 458. However, when an embarrassed debtor conveys property to a near relative or member of his household, that conveyance must be looked upon with suspicion and scrutinized with care; if the evidence shows the conveyance to be voluntary it is prima facie fraudulent; and if the embarrassment of the debtor proceeds to financial wreck, the conveyance is presumed conclusively to be fraudulent as to existing creditors. Sieb's Hatcheries, Inc., v. Lindley, D.C.Ark., 111 F.Supp. 705, affirmed 8 Cir., 209 F.2d 674; Southern Lumber Company v. Riley, Ark., 273 S.W.2d 848; Brady v. Irby, 101 Ark. 573, 142 S.W. 1124; Wilks v. Vaughan, 73 Ark. 174, 83 S.W. 913. See also, American Bonding Co. of Baltimore v. Hord, 8 Cir., 98 F.2d 350, 355; Section 68–1302, Ark.Stats.1947, Annotated; Hinton v. Willard, 215 Ark. 204, 209, 220 S.W.2d 423 (sham partnership); Evans v. Cheatham, 183 Ark. 82, 85, 34 S.W.2d 1076, 1077. In Brady v. Irby, supra, the Court at page 578 of 101 Ark., at page 1125 of 142 S.W. said:

"This court said, in the case of Rudy v. Austin, 56 Ark. 73, 19 S.W. 111, 35 Am.St.Rep. 85: 'The law requires every man to be just before he is generous. If he makes a voluntary conveyance while he is in debt, it presumes that it is fraudulent as to existing creditors, and the burden is on those claiming under the conveyance to repel the presumption. If he be insolvent and unable to pay his debts, the presumption that it is fraudulent as to antecedent creditors is conclusive.' And in that case there is also quoted this rule announced in the case of Driggs [& Co.'s Bank] v. Norwood, 50 Ark. [42] 46, 6 S.W. [323] 324, 7 Am. St.Rep. 78: 'Every voluntary alienation of his property by an embarrassed debtor is presumptively fraudulent against existing creditors. Indebtedness raises a presumption of fraud, which becomes conclusive upon insolvency.'"

 It is to be noted that the presumption of fraud applies only to existing creditors, and does not apply to subsequent creditors. Sieb's Hatcheries, Inc., v. Lindley, supra, at page 714 of 111 F.Supp. and authorities there cited.

The Court is convinced that R. A. Rice owns a one-half interest in the Montgomery County Insurance Agency, and one-half of the stock in the name of J. A. Rice. It was quite evident from the appearance of the Rice brothers on the witness stand and from the evidence concerning their business ventures that R. A. Rice had superior ability and was the dominant member of said businesses. It is inconceivable that he would manage all the business affairs of J. A. Rice and himself, and be content with the ownership of a mere ten per cent of the assets. The Court is convinced that the purported partnership agreement made in New York, as well as the two notes executed by R. A. Rice, payable to his brother, were merely subterfuges designed to thwart plaintiff in her effort to secure the payment of support payments and the judgments rendered thereon.

The primary contention of defendants is that R. A. Rice never owned an inter-

est in the Insurance Agency, property or stock in question. Their argument is that R. A. Rice owned a ten per cent interest in the Rice Bros. Mfg. Co.; that the Bank stock was purchased with assets of the said Company and R. A. Rice owned no more than ten per cent of said stock; and that the Insurance Agency and the real property were financed by money belonging to J. A. Rice.

As to the stock, defendants contend that when the stock purchase was made Mrs. Lula V. Rice gave her entire interest to J. A. Rice, reserving only 13 shares; that J. A. Rice actually owned 437.9 shares, although R. A. Rice was the record title-holder of 244 shares (one-half of the 488 shares); that "Roy (R. A. Rice), though he took the record title to the 244 shares, he did not become the owner of the entire lot. By an agreement between Joe (J. A. Rice) and Roy, Joe made a conditional sale to Roy of 90% of his interest in the 244 shares standing in Roy's name. Under this agreement between Joe and Roy, it was mutually agreed and settled that Joe owned 90% of the 244 shares in Roy's name, or 219.6 shares thereof, and that Roy owned in his own right 10% of said 244 shares, or 24.4 shares." Defendants concede that the "recall" of the 24.4 shares owned by R. A. Rice was without consideration, but assert that J. A. Rice had a right to "recall" his 90% interest in the 243 shares at that time held by R. A. Rice.

These contentions cannot be sustained. In the first place, if the interest of R. A. Rice in the stock was ten per cent, it would have been ten per cent of the entire 501 shares, or an interest of 50.1 shares. There is no plausible basis upon which it could be determined that R. A. Rice owned 24.4 shares. And secondly, as heretofore stated the Court is convinced from all the evidence that R. A. Rice in fact owned one-half of the stock in question, and that the transfer of the stock from R. A. Rice to J. A. Rice was solely for the purpose of preventing plaintiff from collecting her judgments.

Defendants also contend that the $12,936 note given the Commercial National Bank (to obtain money to purchase the 323.4 shares of Beavers' stock) was executed by J. A. Rice and that R. A. Rice was merely an endorser. However, the loan was obtained upon the strength of the joint financial statement of R. A. Rice and J. A. Rice, and the note was the joint note of the said brothers. Thus, R. A. Rice and J. A. Rice were and are jointly and severally liable on the note, Section 68–117(7), Ark.Stats.1947, Annotated, and since R. A. Rice furnished one-half the consideration for the purchase of the Beavers' stock, he owns one-half of said stock even though it is in the name of J. A. Rice.

With regard to the Montgomery County Insurance Agency, the evidence is clear and convincing that the Rice brothers are equal partners. At the time the Agency was formed, R. A. Rice, J. A. Rice and Amos Horn each owned a one-third interest. When Horn gave his interest back to the Rice brothers, they then each owned a one-half interest, and since that time no change has been made in the ownership of said Agency.

The real property in question, however, stands on a different footing. That conveyance was by third parties to J. A. Rice, and the burden was upon plaintiff to prove that R. A. Rice actually owned an interest in said property. The only testimony on that point was that of Harry E. Sparks who testified that R. A. Rice handled the transaction, and that he (Sparks) thought payment was made either by a personal check of R. A. Rice or by a check on the account of the Royal Lumber Company. It is true that these facts create a suspicion that R. A. Rice might own an interest in said property, but the evidence is insufficient to sustain plaintiff's burden of proof in this regard.

### Conclusions of Law

1.

The Court has jurisdiction of the parties to and the subject matter of this proceeding.

2.

Defendants in their answer denied that the New York Court had jurisdiction to

render the $12,008.19 judgment. However, in their argument and brief defendants make no contention that any of the New York judgments were invalid, and apparently abandon that defense. In any event, in Rice v. Rice, Ark., 262 S.W.2d 270, the Supreme Court of Arkansas held that the $1,179.02 judgment (representing past-due installments at $15 a week) and the $2,320.22 judgment (based upon past-due installments at $100 a week) were both valid and entitled to full faith and credit. The $12,008.19 judgment and the $3,885.40 judgment were obtained in the same manner as the $2,320.22 judgment, and they are likewise valid and entitled to full faith and credit.

Therefore, plaintiff is entitled to recover of and from the defendant, R. A. Rice, the sum of $19,392.83, which is the total amount of the four judgments obtained by plaintiff against R. A. Rice in the Supreme Court of Westchester County, New York. Plaintiff is also entitled to recover interest at the rate of 6% per annum as follows: (1) upon the sum of $1,179.02, from October 26, 1951, until paid; (2) upon the sum of $2,320.22, from January 8, 1952, until paid; (3) upon the sum of $12,008.19, from February 24, 1954, until paid; and (4) upon the sum of $3,885.40, from September 28, 1954, until paid.

### 3.

■ The evidence is insufficient to establish that R. A. Rice owns any interest in the lots situated in Mount Ida, Arkansas, and the complaint of plaintiff, as to said real property, should be dismissed for want of equity.

### 4.

■ The defendant, R. A. Rice, owns an undivided one-half interest in the Montgomery County Insurance Agency, and the said defendant's interest in the assets of said Agency are subject to process for the collection of the judgment in favor of plaintiff.

### 5.

■ The defendant, R. A. Rice, owns one half of the unencumbered stock now in the name of J. A. Rice, represented by Certificate No. 172 for 323.4 shares; Certificate No. 180 for 154.6 shares; Certificate No. 183 for 52.4 shares; and Certificate No. 185 for 26.2 shares, making a total of 556.6 shares in the name of J. A. Rice. The transfer of stock from R. A. Rice to J. A. Rice was fraudulent and should be set aside.

The defendant, J. A. Rice, should be ordered to surrender these certificates (172, 180, 183, 185) to the Bank of Montgomery County. The Bank of Montgomery County should be ordered to re-issue the stock as follows: 278.3 shares to J. A. Rice and 278.3 shares in the name of R. A. Rice, and the 278.3 shares in the name of R. A. Rice should be deposited in the registry of the Court and be subjected to process for the collection of the judgment herein.

### 6.

The Commercial National Bank has a valid first lien on Certificates Nos. 173, 181 and 167, totaling 311.4 shares, which were pledged to secure the indebtedness of J. A. Rice and R. A. Rice represented by the note dated February 2, 1954, in the amount of $12,936, with interest at the rate of 3 per cent per annum. The said note is the joint note of R. A. Rice and J. A. Rice, and they are jointly and severally liable thereon. Section 68–117 (7), Ark.Stats.1947, Annotated.

### 7.

R. A. Rice and J. A. Rice each own an undivided one-half interest in the pledged stock, to-wit: Certificate No. 173 for 223 shares; Certificate No. 181 for 72.4 shares; and Certificate No. 167 for 16 shares, making a total of 311.4 shares. The Commercial National Bank should be ordered to deliver these certificates (173, 181, 167) to the Bank of Montgomery County. The Bank of Montgomery County should be ordered to re-issue the stock as follows: 155.7 shares in the name of R. A. Rice and 155.7 shares in the name of J. A. Rice. The certificates as re-issued should be ordered returned to the Commercial National Bank and be sub-

ject to the same lien as were Certificates Nos. 173, 181, and 167.

The certificate for 155.7 shares issued in the name of R. A. Rice will be subject to process for the collection of plaintiff's judgment herein. Section 30–219, Ark. Stats., 1947, Annotated (1953 Supp.). The right of the Commercial National Bank as a prior lienholder is in no way affected by the Court's decision in the instant case, and if the pledged stock of R. A. Rice is sold under the provisions of 30–219, supra, the Commercial National Bank shall be first paid out of the proceeds of said sale.

A judgment in accordance with the above should be entered.