In re Allen David HUNTER, Debtor.

No. 3:02–bk–76401.

United States Bankruptcy Court,
W.D. Arkansas,
Harrison Division.

July 29, 2003.

Kerry Dale Chism, Kincade Law Office, Mountain Home, AR, for Creditor.

Jill R. Jacoway, Jacoway Law Firm, Fayetteville, AR, for Trustee.

Claude R. Jones, Jones Law Office, Harrison, AR, for Debtor.

## MEMORANDUM OPINION AND ORDER

RICHARD TAYLOR, Bankruptcy Judge.

Pending before the Court is the Objection to Claim of Exemptions and Motion For Turnover filed by the trustee, Jill Jacoway, and the Objection to Claim of Exemptions and Motion For Turnover filed by creditor, Carlos Parker. Both objections were filed on December 12, 2002. The debtor, Allen David Hunter [A.D. Hunter], received a discharge in this bankruptcy case on May 13, 2003. The two objections to the debtor's claim of

exemptions were heard by the Court on July 11, 2003, after three prior continuances. After the July 11, 2003, hearing, the Court took the objections under advisement.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157, and it is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B) and (E). The following memorandum opinion and order constitutes findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**BACKGROUND**

The gravamen of the objections relate to a piece of real property that the debtor listed on his bankruptcy petition and claimed as exempt on his Schedule C:

Pt. NE 1/4, NE 1/4 and all of the NW 1/4 NE 1/4 lying East pf [sic] Arkansas State Highway 14 Marion County, AR. In Section 16, Township 18, North, Range 16 West and all that portion of CR 614 which was abandoned by Court Order No. 95–9 all in Marrion [sic] County, AR.[1]

At one time, the debtor resided on a portion of this property that he and his wife, Barbara Hunter, were purchasing under a contract for deed from Edward and Dorothy Brown. The contract for deed was signed by all parties on July 10, 1989, and the debtor made payments pursuant to the contract until 1994. The property was described as follows:

Part of the NE 1/4 NE 1/4, Section 16, described as follows: Beginning 80 feet West of the SE corner of said 40 acres, running thence North 20 deg. West 61 feet, thence North 20 deg. East 12 feet, thence North 20 deg., West 660 feet, thence North 40 deg. West 125 feet, thence in a Southwesterly direction with the meanders of Bluff and fence as now located 1000 feet more or less to the South boundary of the NE 1/4 NE 1/4, 200 feet East of the Southwest corner of the same. Thence, East along the South line of said 40 to the place of beginning, containing 10 acres more or less, Section 16, Township 18 North, Range 16 West.

Additionally, according to a warranty deed signed on January 8, 1991, and filed for record on January 22, 1991, the debtor and his wife were owners in fee-simple of property surrounding the above described property and also located in the NE 1/4 of the NE 1/4 of Section 16, Township 18, Range 16W, with the exception of a .76 acre tract that fronted Arkansas State Highway 14, and a 1.109 acre tract located north of a county road. Finally, the debtor and his wife had record title in the form of a quit-claim deed for property located in the NW 1/4 of the NE 1/4 of Section 16, Township 18, Range 16W that was contiguous to the above described property and east of Arkansas State Highway 14.

On April 23, 1996, A.D. Hunter signed a warranty deed that conveyed to his wife his interest in the property located directly east of the property that he and his wife were purchasing from the Browns. This deed was filed for record on July 8, 1996. Included in the legal description was an 80 foot strip of land located on the west side of the conveyed property that included a portion of the house the Hunters were purchasing from the Browns.[2] On August 16, 1996, the debtor and Barbara Hunter were divorced, and on October 17, 1996,

---

1. This ambiguous description has occasioned some confusion that will be clarified in this opinion.

2. This 80 foot strip of land will be discussed in more detail later.

the debtor was incarcerated until September 6, 2002.

As stated earlier, the debtor made payments pursuant to the contract with the Browns until 1994. He testified at the hearing that he stopped making payments because he thought he was buying 10 acres, and later discovered he was only buying 8.75 acres. As a result of the non-payment, Ms. Brown[3] filed a suit against the debtor and Barbara Hunter to foreclose the real estate sales contract and recover the property. The Chancery Court of Marion County issued its order on February 18, 1998. In its order, the court found that the original description of the property the Browns sold to the Hunters "did not cover all of the house they built or the yard or other area which they occupied with the house." According to the court, upon discovering the defect in the description of the land, Mr. Hunter then obtained a quitclaim deed from neighboring landowners that gave the Hunters record title to the property the Browns put the Hunters in possession of—specifically, the 80 foot strip referred to above. However, the court found that because the Browns, prior to conveying the property to the Hunters, had remained in their home "peaceably for over 13 years occupying it, claiming and using it as their own," the Browns had adversely possessed the additional 80 foot strip of land located on the east side of their property. Therefore, the quitclaim deed obtained by the Hunters from the neighboring landowners had no effect. The court then ordered title to the land described as follows to be vested in Ms. Brown:

> All that part of the residential house and land it sits on occupied by Barbara Hunter and formerly occupied by Dorothy J. Brown which is located on the following tract; Part of the Northeast quarter (NE 1/4) of the Northeast quarter (NE 1/4) of Section Sixteen (16), Township Eighteen (18) North, Range Sixteen (16) West, more particularly described as follows: From the Southeast corner of said Northeast quarter of the Northeast quarter of said section, township and range (car axle as shown in Survey Book 12 at page 470) the point of beginning of parcel being described, go with the South line of said forty West 80 feet; then go North 20 degrees West 61 feet; then go North 20 degrees East 12 feet; then go North 20 degrees West 660 feet; then go North 40 degrees West 125 feet; then go South 89 degrees 59 minutes 57 seconds East 402.85 feet to the East line of said forty; then with the said East line go South 784.54 feet to the SE corner of said forty and the original place of beginning along with the land described above, the description of which is referred to as being from Plaintiff's Exhibit 1 . . . . [4]

On December 12, 1998, the debtor signed a warranty deed that conveyed his interest in all of the subject property that remained in his name to "Roby L. Schafer, Trustee of the David A. Hunter Trust UTA dated September 5, 1984, with full power to sell, convey, transfer, mortgage or otherwise encumber." This deed was filed for record on March 4, 1999. Although the debtor testified that he thought he later revoked the trust, no evidence of revocation, the trust, or a deed reconveying the property to the debtor was entered into evidence.

Upon Ms. Brown's death, her property passed to her daughter, Carrie Spence. On November 9, 1999, Ms. Spence signed a

---

**3.** Mr. Brown died in 1993.

**4.** Plaintiff's Exhibit 1 describes the same land sold by the Browns to the Hunters on the contract for deed.

warranty deed that conveyed fee-simple interest in Ms. Brown's property, including the 80 foot strip of land and the house, to Kenton Treat. This deed was filed for record on November 6, 2002. On May 3, 2002, the Commissioner in Chancery for Baxter County, Arkansas, signed a Commissioner's Deed that conveyed fee-simple interest in the remaining property that the debtor conveyed to his wife on April 23, 1996, to Kenton and Carolyn Treat, Co-Trustees of the Treat Family Trust. This deed was filed for record on September 4, 2002.

The debtor was released from prison on September 6, 2002. He returned to the house located on Mr. Treat's property (formerly Ms. Brown's property), but was arrested for trespassing and removed from the property by the sheriff. The debtor then went to live at 811 Estes Street, Yellville, Arkansas.[5] He testified that he occasionally camps on the remaining property (the property that was conveyed to the David A. Hunter Trust UTA), and that, although there is no house on the property, there is a structure on that property he uses for his livestock, and he moved a bed into that structure between 1989 and 1997. Even though there are no utilities on the property, the debtor testified that he intends to live on the property in the future.

## POSITIONS OF THE PARTIES

With regard to the homestead property, the debtor's position is that even though he only had an equitable title to the Brown's property, that was sufficient to impress his right of homestead. When he purchased additional, contiguous property, his homestead increased in size. He stated that he had no intent to abandon the homestead property, even though he conveyed part of the property to his wife and part to the David A. Hunter Trust UTA. He argues that once the property was impressed with his right of homestead, that homestead survived his future actions.

The trustee's position is that the debtor's right to a homestead should be denied because of the debtor's fraudulent and illegal acts relating to the transfer of some of the homestead property. She also argues that because the debtor never legally owned the Browns' property, he could not impress his right of homestead on the remaining property. Finally, the trustee believes that once the remaining property was transferred to the David A. Hunter Trust UTA, the debtor no longer had a right of homestead in the property. With regard to the debtor's claim of personal property exemptions, the trustee does not believe the debtor is allowed the exemptions provided for under the Arkansas Constitution, as listed in his bankruptcy petition.

In addition to the positions taken by the trustee, the creditor, Carlos Parker, also argues that the debtor did not list his exemptions in good faith, as required under Arkansas law.[6]

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

By statute, Arkansas provides that "[r]esidents of this state having the

5. The debtor apparently has record title to this property, although it is not listed on his bankruptcy petition. Barbara Hunter quitclaimed her interest in this property to the debtor on September 19, 1995. Although the debtor testified that he thought he deeded the property back to Barbara Hunter during his incarceration, no deed was introduced reflecting that alleged conveyance.

6. Mr. Parker also argues that the order of restitution he obtained in state court is enforceable as a civil judgment against the debtor and the property in which the debtor is claiming a right of homestead. The Court will not address this part of the creditor's argument because it was not properly before this Court.

right to claim exemptions in a bankruptcy proceeding pursuant to 11 U.S.C. § 522 shall have the right to elect either: (i) The property exemptions provided by the Constitution and the laws of the State of Arkansas; or (ii) The property exemptions provided by 11 U.S.C. § 522(d)." Ark. Code Ann. § 16–66–217 (Supp.2001). In this case, the debtor elected to exempt his property under state law. With regard to the debtor's claim of a homestead exemption, the burden of proving the elements sufficient to establish a homestead is on the debtor. *Smith v. Flash TV Sales and Serv., Inc.*, 17 Ark.App. 185, 706 S.W.2d 184, 187 (1986) (citations omitted). The burden then shifts to the party claiming that a homestead has been abandoned to establish that fact. *Id.* Because the exemption laws are remedial, they should be "liberally construed to effectuate the beneficent purposes for which they are intended." *City Nat'l Bank v. Johnson*, 192 Ark. 945, 96 S.W.2d 482, 484 (1936).

**Homestead**

It is undisputed that the property at issue in this case, which is the property the debtor conveyed to the David A. Hunter Trust UTA,[7] is rural property for purposes of the Arkansas homestead exemption statutes. The Arkansas code provides that the following property shall be exempt from execution under bankruptcy proceedings:

Rural homesteads not exceeding one hundred sixty (160) acres of land with improvements thereon, up to two thousand five hundred dollars ($2,500) in value but in no event less than eighty (80) acres without regard to value—Arkansas Constitution, Article 9, § 4.

Ark.Code Ann. § 16–66–218(b)(3) (Supp. 2001). The Arkansas Constitution provides:

The homestead outside any city, town or village, owned and occupied as a residence, shall consist of not exceeding one acre of land, with the improvements thereon, to be selected by the owner, provided the same shall not exceed in value the sum of two thousand five hundred dollars, and in no event shall such homestead be reduced to less than one-quarter of an acre of land, without regard to value.

Ark. Const. art. 9, § 4.

In order to establish a homestead in Arkansas, the following elements must be met: "(1) the party claiming the exemption must be the head of a household or married; (2) the property must be occupied as a home; and (3) the party claiming the exemption must be a resident of the State of Arkansas." *Smith v. Webb (In re Webb)*, 121 B.R. 827, 829 (Bankr. E.D.Ark.1990). Once the right of homestead is acquired and the property remains occupied by the owner, the right is not lost by the subsequent divorce of the parties, provided he still resides on the property. *White v. Turner*, 203 Ark. 95, 155 S.W.2d 714, 715 (1941) (citations omitted). There is a presumption under Arkansas law that once a homestead is established, the homestead continues until it is abandoned, and abandonment is a question of intention determined by the facts of each case. *City Nat'l Bank*, 96 S.W.2d at 484.

---

**7.** The legal description on the debtor's Schedule C. Real Property is ambiguous at best. The property the debtor conveyed to the trust is the only property on which a legitimate homestead issue is raised. The property that was transferred to Kenton Treat and to Kenton and Carolyn Treat, Co–Trustees of the Treat Family Trust, is clearly not property of the estate and the Court finds that that property, to the extent it is included in the debtor's Schedule C description, is not homestead property or subject to turnover.

In 1989, the debtor and his wife entered into a contract to purchase approximately 10 acres of land from the Browns, including a house that was [supposedly] located on the 10 acres. When the debtor and his wife moved into that house, the debtor established a homestead in that property: he was married, the property was occupied as a home, and he was a resident of the State of Arkansas. There is no specific requirement that the person claiming the homestead own the property in fee simple, only that he have an equitable interest in the property, such as a contract to purchase. *See Childs v. Lambert,* 230 Ark. 366, 323 S.W.2d 564, 566 (1959) ("an equitable estate will support the right of homestead and form a sufficient basis under the law for the claim of homestead"). Two years later, in 1991, the debtor and his wife received a deed in fee simple to the property adjoining the 10 acre tract and lying to the east, north, and west of the property. This additional property increased the area of the debtor's homestead, but it was still significantly under 80 acres. *See Kulbreth v. Drew County Timber Co.,* 125 Ark. 291, 188 S.W. 810, 815 (1916) (stating that a person has a right to enlarge homestead by acquiring contiguous lands).

In 1996, the debtor conveyed part of the property making up his homestead to his wife. Specifically, he conveyed the land east of the Browns' property, including the 80 foot strip of land that was not included the legal description of the Browns' property but which the debtor and his wife had obtained a quitclaim deed to from the neighboring landowners. The warranty deed did not state that the debtor released and relinquished his right to homestead in the conveyed property. In fact, when the trustee asked him why he did not relinquish his homestead right when he conveyed the property, he testi-

fied that he did not intend to waive his homestead. Because the entire property that the debtor conveyed to his wife was later either foreclosed upon by Ms. Brown (with the state court confirming her ownership), or sold by commissioner's deed to Mr. and Ms. Treat, the only relevance to the debtor's statement that he did not intend to waive his homestead is to show that the debtor's intention apparently was to continue to treat the entire property as his homestead. Under Arkansas law, a person does not lose his right of homestead in remaining property after the sale of a portion of the homestead property. *Gill v. Dunn,* 196 Ark. 1178, 116 S.W.2d 612, 613 (1938) (stating that widow did not lose right of homestead by foreclosure sale of a portion thereof). However, the debtor may abandon his right of homestead in the remaining property if he does not impress upon the remaining property a homestead character. *Id.; Flash TV Sales and Serv., Inc.,* 706 S.W.2d at 187 (" 'one must actually and in good faith occupy land as a residence ... to impress it with the homestead character ....' ")(quoting *Bank of Quitman v. Mahar,* 193 Ark. 1111, 104 S.W.2d 800, 801 (1937)).

The Court finds that the debtor, at one time, had a right of homestead in the property that was later conveyed to the David A. Hunter Trust UTA. As stated above, the burden of proving a debtor has abandoned his homestead is on the party claiming the abandonment. The abandonment may be proved by "conduct, circumstances, and actions, as well as by direct testimony." *Flash TV Sales and Serv. Inc.,* 706 S.W.2d at 188.

After the debtor conveyed the above property to his wife, and after he and his wife obtained a divorce on August 16, 1996, he continued to live in the house located on his wife's property. On October 17, 1996, the debtor was incarcerated.

While in prison, the debtor conveyed the remaining property making up his right of homestead to the David A. Hunter Trust UTA. Because the trust documents are not before the Court, the Court cannot determine whether the debtor has a beneficial or reversionary interest in the trust. The debtor testified that he thought the trust was a revocable living trust, and that he revoked it while he was incarcerated. No further evidence regarding the trust was received by the Court.

On September 6, 2002, the debtor was released from prison and paroled to the house located at 811 Estes, which is the house his ex-wife quitclaimed to the debtor shortly after their divorce. However, instead of going to the 811 Estes property, the debtor returned to the house located on the property the debtor conveyed to his wife—the Brown's former property, which was now owned by Mr. Treat. Instead of moving to the property in which he now claims a right of homestead, he chose to move to the one piece of property he clearly did not own.[8] Shortly thereafter, the debtor was arrested for trespassing and evicted from that house. He then moved into the 811 Estes property, which is where he was living when he filed his bankruptcy petition on October 9, 2002.

The property the debtor conveyed to the David A. Hunter Trust UTA is the property in which the debtor now claims a right of homestead. The debtor testified that there was a structure located on that property, and that he moved a bed into the structure between 1989 and 1997. The debtor also testified that the structure had a dirt floor and no utilities, and that he only spent a few nights there. In fact, from his testimony, it appears that his only

reason for being there overnight was to assist mares in foaling. According to the debtor, he does plan to build a house on the property in the future. When the debtor was released from prison, he did not return to the homestead property; instead, he returned first to his wife's former property, then to the 811 Estes residence. Under Arkansas law, intention to establish a homestead is not sufficient without actual occupancy. *Bank of Quitman*, 104 S.W.2d at 801. Likewise, occasional occupancy of the homestead property will not impress the property with homestead character if the debtor is living elsewhere. *Id.* In this case, the debtor's only tie to the property in which he now claims a right of homestead, was, at best, camping, and more likely pasture, rather than a residence. Arkansas law requires " 'actual occupancy in good faith essential to the impressment of the homestead character.' " *Id.* at 802 (quoting *Chastain v. Arkansas Bank & Trust Co.*, 157 Ark. 423, 249 S.W. 1, 2 (1923)). Accordingly, the Court finds that the debtor's homestead interest in the property the debtor conveyed to the David A. Hunter Trust UTA, and in which he now claims a right of homestead, has been abandoned by the debtor. The property is no longer impressed with homestead character sufficient to allow the debtor to claim a right to homestead exemption in the property.

**Personal Property**

The debtor also claimed an exemption in personal property in the amount of $481.00, pursuant to the Arkansas Constitution, Article 9, Section 2; and Arkansas Code Annotated § 16–66–218(b)(2). Section 16–66–218(b)(2) of the

---

8. This is consistent with a pattern established by this debtor. On a previous occasion, he attempted to circumvent the purchase agreement with the Browns by recording a copy of the deed to the property that was held in escrow. He pled guilty to a misdemeanor for this fraudulent act.

Arkansas code provides that the following property shall be exempt under Arkansas law: "The personal property of a married person or head of a family not exceeding a value of five hundred dollars ($500) in addition to such person's wearing apparel— Arkansas Constitution, Article 9, Section 2." Ark.Code Ann. § 16–66–218(b)(2) (Supp.2001). Article 9, section 2 of the Arkansas Constitution provides:

> The personal property of any resident of this State who is married or the head of a family, in specific articles to be selected by such resident, not exceeding in value the sum of five hundred dollars in addition to his or her wearing apparel, and that of his or her family, shall be exempt from seizure on attachment, or sale on execution, or other process from any court on debt by contract.

Ark. Const. art 9, § 2. The debtor filed his petition as a single person, and testified that he was not married when he filed his bankruptcy petition. Bankruptcy exemptions are fixed on the date the bankruptcy petition was filed. *In re Jones,* 193 B.R. 503 (Bankr.E.D.Ark.1995) (quoting *Armstrong v. Peterson (In re Peterson),* 897 F.2d 935, 937 (8th Cir.1990)). Accordingly, the debtor is not entitled to the personal property exemption found in the Arkansas Constitution, Article 9, Section 2; and Arkansas Code Annotated § 16–66–218(b)(2).

## CONCLUSION

For the reasons stated in this memorandum opinion, the Court finds that the debtor, Allen David Hunter, abandoned his right of homestead in the property that he conveyed to the David A. Hunter Trust UTA. The Court also finds that the debtor, Allen David Hunter, was single at the time he filed his bankruptcy petition and is not entitled to claim the Arkansas personal property exemptions listed in his petition. Therefore, the objections to the debtor's claims of exemptions filed by the trustee, Jill Jacoway, and the creditor, Carlos Parker, are sustained.

The Court also finds that the debtor, Allen David Hunter, listed the property he conveyed to the David A. Hunter Trust UTA in his bankruptcy petition, asserts ownership of that property, testified that he intended to revoke the trust that allegedly has an interest in the property, and, according to his testimony, has the power to revoke the trust. Therefore, the motions for turnover of the land listed in the debtor's Schedule A. Real Property, and Schedule C. Property Claimed as Exempt, filed by the trustee, Jill Jacoway, and the creditor, Carlos Parker, are granted. The debtor is ordered to take such steps as are necessary to deliver this property to the trustee for administration in the debtor's bankruptcy estate.

Finally, the motions for turnover of the personal property listed in the debtor's Schedule B. Personal Property, and Schedule C. Property Claimed as Exempt, filed by the trustee, Jill Jacoway, and the creditor, Carlos Parker, are granted in part and denied in part. The debtor shall have 20 days from the entry of this order to amend his petition to claim the proper personal property exemption for a single person, pursuant to the Arkansas Constitution. The debtor shall then deliver the remaining property to the trustee for administration in the debtor's bankruptcy estate.

IT IS SO ORDERED.